1   Shaun Setareh (SBN 204514)
    shaun@setarehlaw.com
2   Jose Maria D. Patino, Jr. (SBN 270194)
    jose@setarehlaw.com
3   Tyson Gibb (SBN 339154)
    tyson@setarehlaw.com
4   SETAREH LAW GROUP
    9665 Wilshire Blvd., Suite 430
5   Beverly Hills, California 90212
    Telephone (310) 888-7771
6   Facsimile (310) 888-0109

7   Attorneys for Plaintiffs
    KASPER LEUZINGER, MICHAEL ALLEN JENSEN,
8   and RICARDO AMEZCUA

9   [*Additional counsel listed on next page*]

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12  KASPER LEUZINGER, MICHAEL ALLEN          Case No.: 4:21-cv-04952-YGR
    JENSEN, WILLIAM MATNEY-TATE, and
13  RICARDO AMEZCUA, on behalf of            Consolidated with:
    themselves and all others similarly     4:21-cv-07474-YGR
14  situated,                                4:21-cv-07741-YGR
                                             4:22-cv-06501-YGR
15              *Plaintiffs*,
                                             [Related on July 27, 2021 to *Castro v. Gardner
16          vs.                              Trucking, Inc.*, N.D. Cal. Case No. 4:20-cv-
                                             05473-YGR]
17  GARDNER TRUCKING, INC., a California
    corporation, GARDNER TRUCKING            **NOTICE OF MOTION AND UNOPPOSED**
18  CONVERSION, LLC, a California Limited    **MOTION FOR PRELIMINARY**
    Liability Company; CRST EXPEDITED, INC., **APPROVAL OF CLASS ACTION**
19  an Iowa Corporation; CRST THE            **SETTLEMENT AND CERTIFICATION OF**
    TRANSPORTATION SOLUTION, INC., an        **SETTLEMENT CLASSES;**
20  entity of unknown formation; and DOES 1  **MEMORANDUM OF POINTS AND**
    through 50, inclusive,                   **AUTHORITIES IN SUPPORT THEREOF**
21
                *Defendants*.                [*Filed Concurrently with the Declarations of
22                                           Shaun Setareh, James R. Hawkins, Kasper
                                             Leuzinger, Michael Allen Jensen, William
23                                           Matney-Tate, Ricardo Amezcua, and Anthony
                                             Rogers; and [Proposed] Order*]
24
                                             Date:   July 9, 2024
25                                           Time:   2:00 p.m.
                                             Place:  Courtroom 1 – 4th Floor
26
                                             Action Filed:    June 28, 2021
27

28

---

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASSES

1  James R. Hawkins, Esq. (#192925)
   Gregory Mauro, Esq. (#222239)
2  JAMES HAWKINS APLC
   9880 Research Drive, Suite 200
3  Irvine, CA 92618
   Tel.: (949) 387-7200
4  Fax: (949) 387-6676
   Email: James@jameshawkinsaplc.com
5  Email: Greg@jameshawkinsaplc.com

6  Attorneys for Plaintiff WILLIAM MATNEY-TATE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1    TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on July 9, 2024 at 2:00 p.m., or as soon thereafter as the matter

3    may be heard in Courtroom 1 of the United States District Court for the Northern District of California,

4    located on the 4th Floor at 1301 Clay Street, Oakland, California 94612, Plaintiffs KASPER

5    LEUZINGER, MICHAEL ALLEN JENSEN, WILLIAM MATNEY-TATE, and RICARDO

6    AMEZCUA (collectively, the "Plaintiffs") will and do hereby move this Court to: (1) conditionally

7    certify proposed settlement classes; (2) preliminarily approve the Parties' proposed class action

8    settlement (the "Settlement"); (3) appoint Plaintiffs as the Class Representatives, their counsel as the

9    Class Counsel, and ILYM Group, Inc. as the Settlement Administrator; (4) approve the form of Class

10   Notice and proposed timeline for administration; and (5) schedule a hearing on the final approval of the

11   Settlement for November 19, 2024, or as soon thereafter as the Court is available.  This Motion is not

12   opposed by Defendant CRST EXPEDITED, INC. ("Defendant" or "CRST") (Plaintiffs and Defendant,

13   collectively, the "Parties").

14         This Motion is made on the grounds that the Settlement is fair, adequate, reasonable, and within

15   the range of possible final approval.

16         This Motion is based upon this Notice of Motion and Unopposed Motion for Preliminary

17   Approval of Class Action Settlement and Certification of Settlement Classes, the points and authorities

18   herein, the accompanying Declarations of Shaun Setareh, James R. Hawkins, Kasper Leuzinger,

19   Michael Allen Jensen, William Matney-Tate, Ricardo Amezcua, and Anthony Rogers, all

20   accompanying exhibits, as well as all other pleadings and papers on file with this Court and such further

21   evidence and arguments as may be presented at the hearing.

22

23   DATED:  May 1, 2024                    SETAREH LAW GROUP

24

25                                         /s/ Shaun Setareh
                                           SHAUN SETAREH
26                                         Attorneys for Plaintiffs
                                           KASPER LEUZINGER, MICHAEL ALLEN JENSEN,
27                                         and RICARDO AMEZCUA

28

1

TABLE OF CONTENTS

2    I.    INTRODUCTION .................................................................................................1

3    II.    RELEVANT BACKGROUND.............................................................................2

4          A.    FACTUAL AND PROCEDURAL BACKGROUND ...........................2

5    1.    The Parties ...........................................................................................................2

6    2.    Procedural History................................................................................................3

7          B.    PLAINTIFFS' CLAIMS AND DEFENDANTS' DEFENSES .................4

8    1.    Unpaid Wages .......................................................................................................4

9    2.    Meal Break and Rest Break Violations ...............................................................5

10   3.    Unreimbursed Expenses ......................................................................................6

11   4.    Unpaid Vested Vacation Wages ..........................................................................6

12   5.    Derivative Claims.................................................................................................7

13         C.    PLAINTIFFS' ASSESSMENT OF DAMAGES .................................7

14   III.    THE SETTLEMENT ...........................................................................................9

15         A.    THE SETTLEMENT CLASSES.........................................................9

16         B.    GROSS SETTLEMENT AMOUNT ...................................................9

17         C.    SCOPE OF THE CLASS MEMBER RELEASES ...............................10

18         D.    NOTICE PROCEDURES ..................................................................10

19         E.    PAYMENT OF SETTLEMENT AMOUNTS......................................11

20         F.    TAX TREATMENT ..........................................................................11

21   IV.    THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL .........11

22         A.    NORTHERN DISTRICT PROCEDURAL REQUIREMENTS FOR CLASS ACTION
               SETTLEMENTS ............................................................................13

23
24   1.    Any Differences Between the Settlement Class and the Class Proposed in the Operative
         Complaint or Between the Claims Released in the Settlement and Those Pled in the Operative
         Complaint ............................................................................................................13

25
     2.    Estimate of the Number of Class Members Expected to Submit a Claim...................14

26   3.    Other Cases Potentially Impacted by the Settlement .................................................14

27   4.    Settlement Administration ........................................................................................15

28

| | | | |
|---|---|---|---|
| 5. | | Class Counsel's Lodestar and Multiplier Sought | 15 |
| | a. | A Reasonable Result Was Achieved on Behalf of the Class | 15 |
| | b. | The Experience, Reputation, and Ability of Class Counsel | 16 |
| | c. | The Effort Required by the Litigation Justifies the Fee | 17 |
| | d. | The Complexity of the Legal and Factual Issues | 17 |
| | e. | Class Counsel Assumed Substantial Risk | 17 |
| 6. | | Notice Pursuant to the Class Action Fairness Act of 2005 | 18 |
| 7. | | Notice to the LWDA Pursuant Cal. Labor Code § 2699(l)(2) | 18 |
| 8. | | Plaintiffs' Service Awards | 19 |
| | B. | THE SETTLEMENT IS THE PRODUCT OF INFORMED, NON-COLLUSIVE NEGOTIATIONS | 19 |
| | C. | THE SETTLEMENT HAS NO "OBVIOUS DEFICIENCIES" | 20 |
| | D. | THE SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL | 20 |
| 1. | | Liability Is Contested, and the Settlement Provides Class Members with Substantial Monetary Relief | 21 |
| 2. | | The Class Release Is Appropriate Given Plaintiffs' Claims | 22 |
| 3. | | Class Counsel's Fees Sought Are Consistent with Prevailing Market Rates | 22 |
| E. | | CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS AND COLLECTIVE FOR SETTLEMENT PURPOSES ONLY IS APPROPRIATE | 22 |
| 1. | | The Numerosity Requirement Is Met | 23 |
| 2. | | Commonality and Typicality Requirements | 23 |
| 3. | | Adequacy of Representation | 24 |
| 4. | | Class Certification For Settlement Purposes Is Proper Under Rule 23(b)(3) | 24 |
| | F. | THE NOTICE IS FAIR AND ADEQUATE | 24 |
| | G. | ILYM SHOULD BE APPOINTED SETTLEMENT ADMINISTRATOR | 25 |
| | H. | RESIDUAL | 26 |
| | I. | PAST DISTRIBUTIONS | 26 |
| | J. | PROPOSED SCHEDULE | 26 |
| V. | | CONCLUSION | 26 |

iv

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASSES

TABLE OF AUTHORITIES

<u>Cases</u>

*Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ...............................25

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ..............................................11

*Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967) .23

*Diaz v. Trust Territory of Pac. Islands,* 876 F. 2d 1401, 1408 (9th Cir. 1989) ...................................12

*Ellender v. Schweiker*, 550 F. Supp. 1348 (S.D.N.Y. 1982) ................................................................23

*Flannery v. California Highway Patrol*, 61 Cal.App.4th 629, 647 (1995) .........................................17

*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)...................................................22

*Gay v. Waiters' & Dairy Lunchmen's Union Loc. No. 30*, 489 F. Supp. 282 (N.D. Cal. 1980) ..........23

*Gordon v. Forsyth Cty. Hosp. Auth., Inc.*, 409 F. Supp. 708, 711 (M.D.N.C. 1975).........................23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).......................................................12

*Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33 (2001) ........................................................................18

*Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008) .....................................................23

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)............................................21

*Linney v. Cellular Alaska Partnership*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997)...........................................................................................................................................16

*Luo v. Zynga Inc.*, No. 13-cv-00186 NC, 2014 WL 457742, at **3-4 (N.D. Cal. Jan. 31, 2014)........12

*Lyons v. Bank of Am., NA,* No. C 11-1232 CW, 2012 WL 5940846, at *1, n.1 (N.D. Cal. Nov. 27, 2012) ...........................................................................................................................................12

*McNeill v. New York City Housing Authority*, 719 F.Supp. 233 (S.D.N.Y. 1989) .............................23

*Mendoza v. Tucson Sch. Dist. No. 1.*, 623 F.2d 1338, 1352 (9th Cir. 1980) ......................................25

*North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal. App.4th 1085, 1089-90 (1994) .........................................................................................................................................12

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999)........................................................................15

*Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989) .........................................................23

*Serrano v. Priest*, 20 Cal.3d 25, 49 (1977) ........................................................................................15

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. Jun. 17, 2015)..............................................................................................................21

*Susquehanna Tp. v. H and M, Inc.*, 98 F.R.D. 658 (M.D. Pa. 1983) .................................................23

*Tombline v. Wells Fargo, NA,* No. 13-cv-04567-JD, 2014 WL 5140048, at *2 (N.D. Cal. Oct. 10, 2014) ..................................................................................................................................12

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ...................................11

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ....................................15

*Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 245 (2001) ...................................17

<u>Statutes</u>

28 U.S.C. § 1715(b)..............................................................................................................18

28 U.S.C. §§ 1332(d), 1453(b).............................................................................................18

Fed. R. Civ. P. 23(a)(2).........................................................................................................23

Fed. R. Civ. P. 23(b)(3) ........................................................................................................24

Fed. R. Civ. P. 23(c)(1).........................................................................................................23

Fed. R. Civ. P. 23(e) .............................................................................................................11

Federal Rule of Civil Procedure Rule 23(e) ........................................................................12

<u>Other Authorities</u>

*Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") § 30.41 ....................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASSES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  **INTRODUCTION**

Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Classes (the "Motion") seeks preliminary approval of the class action and Private Attorneys General Act of 2004 (PAGA) representative action settlement between the Plaintiffs and CRST.  As the result of arm's-length negotiations under the supervision of Hon. Amy D. Hogue (Ret.),[1] an experienced and well-renowned mediator with expertise in mediating complex wage and hour class actions, the Parties have reached a fair and reasonable class action settlement of Plaintiffs' claims. Pursuant to the Settlement Agreement ("Agreement"),[2] The Parties now request that the Court enter an order: (1) preliminarily approving the Agreement; (2) certifying the Settlement Classes only for purposes of settlement under the Agreement; (3) appointing Plaintiffs as the Class Representatives, Setareh Law Group and James Hawkins APLC as Class Counsel, and ILYM Group, Inc. ("ILYM") as the Settlement Administrator; (4) approving and directing the emailing and mailing of the Class Notice; and (5) scheduling a final approval hearing on November 19, 2024 or a later date available to the Court.

The Agreement provides for a Gross Settlement Amount ("GSA") of **$4,050,000**. (Agreement, ¶ 13.)  The GSA shall include all payments contemplated by the Agreement, including all Individual Settlement Payments to the Settlement Class Members, the Service Awards to Plaintiffs, the Attorneys' Fees and Costs to Class Counsel, the PAGA Penalties, the Settlement Administration Costs, and payroll taxes on any portion of payments to the Settlement Classes or PAGA Aggrieved Employees that constitute wages. (*Id.*, ¶ 13.)  No Settlement Class Member will have to submit a claim form in order to receive a proportionate share of the Settlement Fund, and checks will be distributed directly to them. (*Id.*, ¶¶ 50, 62.)  Any checks issued to Settlement Class Members shall remain valid and negotiable for 180 calendar days after the date they are issued. (*Id.*, ¶ 63.)  In the event that an Individual Settlement

---

[1] Plaintiffs Leuzinger, Matney-Tate, and Jensen first participated in a full-day, private mediation with CRST on June 1, 2022 with a different mediator, Steven G. Mehta. (Agreement, fn. 2.)

[2] The executed Agreement between the Parties is attached as **Exhibit 1** to the Declaration of Shaun Setareh in Support of Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Setareh Declaration" or "Setareh Decl.") filed concurrently herewith.

Payment check has not been cashed within 180 calendar days, then such funds will be tendered to the State of California Unclaimed Property Fund in the name of Settlement Class Member who did not cash the check. (*Id.*)  As estimated by CRST at the time the Agreement was executed, there are 12,680 Class Members. (Setareh Decl., ¶ 35.)  CRST represents that as of October 31, 2023, the Settlement Classes had worked an estimated 636,964 workweeks.  (*Id.*)

The Settlement Fund, or Net Settlement Amount ("NSA"), estimated to be paid to Class Members—after all Court-approved deductions from the GSA, *i.e.*, Class Counsel fees of $1,350,000 (1/3 of the GSA), litigation costs of up to $35,000, settlement administration costs estimated not to exceed $100,000, the PAGA Payment of $200,000 ($150,000 to the Labor & Workforce Development Agency ("LWDA") and $50,000 to the PAGA Aggrieved Employees), Plaintiffs' Service awards of $10,000 each, and the estimated payroll taxes on the wage-allocated portion of the Settlement Fund—is **$2,142,500.00**. (*Id.*, ¶ 52.)  The average estimated Individual Settlement Payment for each Class Member is **$168.97**. (*Id.*)

As discussed below, the Settlement reached here is a good result given the claims at issue in this case, the risk that no class would be certified, CRST's defenses on the merits, and the significant monetary amount obtained for the Classes, which compares favorably to similar settlements approved by other courts.

## II.    RELEVANT BACKGROUND

### A.    FACTUAL AND PROCEDURAL BACKGROUND

#### 1.    The Parties

CRST is among the largest privately held transportation companies in the United States. (https://crst.com/about-crst/.)  Essentially, all Defendants originally sued by the Plaintiffs in each of the respective actions that were consolidated into this Action are now part of CRST Expedited, Inc. ("CRST").  (*See* Agreement, fn. 1.)

Plaintiff Kasper Leuzinger is a California resident who worked for CRST as a truck driver in California from January 2019 to April 2023.  (Declaration of Kasper Leuzinger ("Leuzinger Decl."), ¶¶ 1, 3.)  Plaintiff Ricardo Amezcua is a California resident who worked for CRST as a truck driver and dispatcher in California from February 2018 to February 2020.  (Declaration of Ricardo Amezcua

1   ("Amezcua Decl."), ¶¶ 1, 3.)  Plaintiff Michael Allen Jensen is a California resident who worked for

2   CRST as a truck driver in California from May 2019 to November 2019.  (Declaration of Michael Allen

3   Jensen ("Jensen Decl."), ¶¶ 1, 3.)  Plaintiff William Matney-Tate worked for CRST as a driver in

4   California from January 2021 to June 2021.  (Declaration of William Matney-Tate in Support of Motion

5   for Preliminary Approval of Class Action Settlement ("Matney-Tate Decl."), ¶¶ 1, 3; ECF 88 at 4, ¶ 8.)

6                    **2.    Procedural History**

7            A detailed description of the procedural history of this consolidated Action from the filing of

8   each of its constituent cases through its current procedural posture is provided in Paragraphs 7 through

9   17 of the Setareh Declaration.  The relevant history continues below.

10           On October 16, 2023, the Parties participated in a second arm's-length mediation,[3] this time with

11   Hon. Amy D. Hogue (Ret.), a well-renowned and experienced wage and hour class action mediator and

12   former presiding judge of the Civil Complex Litigation division of Los Angeles Superior Court.

13   (Setareh Decl., ¶ 18.)  CRST provided class data updated from the first mediation session. (*Id.*) At the

14   mediation, the Parties debated their legal positions, the likelihood of certification of Plaintiffs' claims,

15   and the legal bases for the claims and defenses. (*Id.*) Ultimately, the Parties agreed resolve the Action on

16   a class-wide basis pursuant to a mediator's proposal. (*Id.*)

17           On February 27, 2024, after thorough discussion and revisions, the Parties fully executed a

18   Memorandum of Understanding that memorialized the major terms of the Settlement. (*Id.*, ¶ 19.)

19           On April 19, 2024, Plaintiff Matney-Tate submitted an Amended PAGA Notice to the LWDA

20   and served it upon CRST, to which a copy of Plaintiffs' proposed Third Amended Consolidated Class

21   Action Complaint ("TAC"), was attached as an enclosure.  (Declaration of James R. Hawkins

22   ("Hawkins Declaration" or "Hawkins Decl."), Ex. 1.)  On April 26, 2024, Plaintiff Amezcua did the

23   same. (Setareh Decl., ¶ 20, Exs. 2, 3.)   The proposed TAC is intended to be the operative complaint for

24   the purposes of this Settlement, and it will cover the claims released thereunder.  (*Id.*)  Once the 65-day

25   exhaustion period required under PAGA has transpired without the LWDA taking action, Plaintiffs will

26

27   _____

28           [3] (*See* fn. 1, *supra*.)

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASSES

seek leave of the Court to file the TAC to make it the Operative Complaint in this Action. (*Id.*) Plaintiffs' selected hearing date for this Motion, July 9, 2024, is more than 70 days after submission of the Amended PAGA Notices, and thus, the TAC will be on file before the Court rules as to whether to grant preliminary approval. (*Id.*)

On April 30, 2024, the Parties fully executed the long-form Settlement Agreement, and Plaintiffs submitted copies of the fully executed Settlement Agreement to the LWDA. (Setareh Decl., ¶ 21, Ex. 4.) After the Motion has been filed with the Court, Plaintiffs will submit the conformed copies of the Motion received via ECF to the LWDA. (Setareh Decl., ¶ 21.)

### B.   PLAINTIFFS' CLAIMS AND DEFENDANTS' DEFENSES

The claims made by the Plaintiffs and the defenses raised by the Defendants in this Action are summarized below. They are discussed in detail in Paragraphs 23 through 34 of the Setareh Declaration.

#### 1.   Unpaid Wages

Plaintiffs claim that they and the putative class were not paid all wages because Defendants made them perform work off-the-clock, rounded their recorded time worked on shifts downward more than upward, and used the incorrect regular rate of pay to calculate their overtime, double-time, and meal and rest break premium wages. (Setareh Decl., ¶¶ 23-25.) Defendants generally deny these allegations and raise specific defenses to them. (*Id.*, ¶ 26.)

<u>Off-the-Clock Work</u>. Plaintiffs claim that they were required to perform work while off-the-clock prior to their shifts by walking from their cars and to their vehicles from the office, filling out paperwork, inspecting their vehicles, and waiting for their Qualcom systems to boot up. (*Id.*, ¶ 23.)

Defendants contend that Plaintiffs allegations do not apply to Expedited Solutions drivers because they are paid both a flat rate for all necessary tasks the estimated miles driven and ancillary pay for non-normal tasks and because they drive in teams, which leaves no "boot up" time, and Dedicated West drivers are paid based on the hours they themselves enter on their timesheets. (*Id.*, ¶ 26.) Defendants further argue that the FLSA and federal law interprets "preliminary" and "postliminary" to not be compensable. (*Id.*)

<u>Rounding of Time Worked</u>. Plaintiffs claim that Defendants rounded Class Members' time worked down more than they rounded up for the purposes of calculating wages, which resulted in

the non-payment of minimum and overtime wages. (*Id.*, ¶ 24.)

Defendants contend that there is no evidence that CRST's timekeeping systems rounded time recorded downwards more than upwards and such a claim could not apply to any employees whose time was manually recorded. (*Id.*, ¶ 26.)

<u>Incorrect Regular Rate of Pay</u>.  Plaintiffs claim that Defendants failed to upwardly adjust Plaintiffs' and class members regular rates of pay by failing to incorporate the value of their non-discretionary bonuses and shift differentials when calculating the overtime and double-time rates of pay each pay period, which meant that they were not properly compensated for overtime and double-time hours worked or paid meal or rest break premiums at the correct rates of pay. (*Id.*, ¶ 25.)

Defendants contend that Plaintiffs are exempt from both FLSA and California overtime requirements and subject to Dept. of Transportation regulations that such claims as applied to meal and rest break premiums are preempted under the Supremacy Clause of the U.S. Constitution. (*Id.*, ¶ 26.)

## 2.    Meal Break and Rest Break Violations

Plaintiffs claim that they were not provided legally required meal breaks and rest breaks during their shifts. (*Id.*, ¶ 27.) First, they were consistently denied the opportunity to take meal periods in accordance with California law as demonstrated by time sheets reflecting shifts in excess of 11 and 12 hours with no second meal periods being taken.  (*Id.*) Second, both meal and rest breaks were regularly interrupted by work-related calls on their personal cell phones, which Plaintiffs were required to keep on and continuously monitor throughout their shifts, in line with Defendants' defective written rest break policy, which fails to require relief from all duty during designated rest breaks. (*Id.*)  Finally, the substantial pre-shift and off-the-clock work unlawfully delayed Class Members' meal and rest breaks. (*Id.*)

Defendants generally deny all of Plaintiffs' allegations. (*Id.*, ¶ 27.) As noted above, Defendants contend Plaintiffs' meal and rest break claims are preempted by federal law. (*Id.*) Specifically, in December 2018, the FMCSA issued an order concluding California's meal and rest break rules are preempted by federal law as applied to property-carrying commercial motor vehicle drivers covered by the FMCSA's hours-of-services regulations (such as Plaintiffs and their putative class members). (*Id.*) CRST contends its drivers haul freight moving in interstate commerce, and they are therefore

all subject to the DOT hours of service regulations. (*Id*.) The FMCSA's order would accordingly preempt their meal and rest break claims. (*Id*.)

### 3.    Unreimbursed Expenses

Plaintiffs claim that Defendants required Plaintiff and class members to incur necessary expenditures to execute their work duties but failed to reimburse them because they were required to use their personal cell phones to respond to calls and text messages from management throughout the workday, they were never provided with maps or a GPS system to help them navigate and had to use the GPS applications on their personal cell phones to map their routes, they were required to purchase their own tools to execute their work duties, and they were required to bear the cost of maintaining and cleaning their company-provided uniforms. (*Id*., ¶ 29.)

Defendants generally deny all of Plaintiffs' allegations. (*Id*., ¶ 30.) Defendants contend Plaintiffs cannot establish that the expenses were "necessary" for or in "direct consequence" of their duties or that CRST ordered them to incur them. (*Id*.) First, each truck had an onboard computer that drivers can use for work-related communication, rendering a cell phone unnecessary. (*Id*.) Second, Plaintiffs will be unable to identify any policy showing that CRST required drivers to use their cell phones in light of this. (*Id*.) Third, should drivers elect to use their cell phone when other forms of employer-provided communication systems are available, that is not a necessary business expense. (*Id*.)  Fourth, there are no records showing if, when, or how often drivers used their cell phones. (*Id*.) Finally, Plaintiffs will be unable to certify a class because answering the question of necessity would require individual determination as to why each driver chose to use his or her cell phone for work related purposes and whether such a choice was reasonable under the circumstances. (*Id*.) Having already prevailed on this question in another case, Defendants contend there is no reason to think there will be a different outcome here. (*Id*.)

### 4.    Unpaid Vested Vacation Wages

Plaintiffs claim that Defendants failed to pay Plaintiffs and class members vested vacation wages based on the following factual allegations: Plaintiffs and the putative class accrued vacation wages during their employment with Defendants, which are considered a form of wages under Labor Code section 200 and which cannot be subject to forfeiture without compensation. (*Id*., ¶ 31.)

1   Defendants maintained policies that provide for the unlawful forfeiture of vested vacation pay. (*Id.*)

2   Upon termination or separation of employment, Defendants failed to pay Plaintiffs and the putative

3   class for all accrued vacation pay to which they are entitled. (*Id.*)

4        Defendants contend CRST has longstanding policies and practices that comply with Section

5   227.3. (*Id.*, ¶ 32.) For all relevant times, Plaintiffs and Settlement Class members were paid all

6   accrued (and vested) vacation time upon termination and cannot show—nor have they alleged—

7   specific evidence to the contrary. (*Id.*)

8              **5.    Derivative Claims**

9        Plaintiffs allege claims for statutory penalties under Labor Code section 203 for failure to

10   timely pay all final wages and under Labor Code section 226 for failure to provide accurate itemized

11   wage statements, for restitution under Business &Professions Code section 17200 *et seq.* for unfair

12   competition, and for civil penalties under Labor Code section 2698 *et seq.* (PAGA), which all derive

13   from the alleged substantive Labor Code violations discussed above. (*Id.*, ¶ 33.)

14       CRST contends Plaintiffs' derivative claims will fail for the same reasons as their underlying,

15   substantive claims. (*Id.*, ¶ 34.) Additionally, CRST asserts that Plaintiffs cannot prove that any

16   nonpayment was willful—a requirement for recovery based on the failure to timely pay wages owed

17   under Section 203— since it has a good faith reason to believe that all wages have in fact been paid. (*Id.*)

18   Nor can Plaintiffs show CRST knowingly and intentionally failed to provide accurate wage statements in

19   violation of Labor Code Section 226—required to recover penalties—because CRST has a good faith

20   defense that Plaintiffs are not owed any wages based on the overtime exemption, and FMCSA

21   preemption of meal and rest break requirements. (*Id.*)

22         **C.    PLAINTIFFS' ASSESSMENT OF DAMAGES**

23       At Paragraph 35 of the Setareh Declaration is a chart that describes the estimated potential

24   recovery on a class basis that Plaintiffs believe they could reasonably achieve *if they were to prevail on*

25   *all their claims.*[4]Despite a total potential recovery of just under $35 million on their compensatory claims

26   _____

27   [4] The data used in the chart is based upon information provided by Defendants for the Parties'
    mediations.  (Setareh Decl., ¶ 36.)  Furthermore, Plaintiffs and Plaintiffs' counsel have not found any
28   evidence of unpaid vested vacation pay for Plaintiffs or putative class members. (*Id.*) Plaintiff Jensen

1    (i.e., for unpaid wages and reimbursable expenses), and just under $119 million on all class claims,

2    including statutory penalties, Plaintiffs recognize the challenges they face in certifying a class action and

3    establishing liability on the wage and hour claims. (*Id.*, ¶ 37.)  Plaintiffs estimate that their likelihood of

4    prevailing on all their causes of action are extremely low and thus their likelihood of recovering $119

5    million or anything close to that amount on behalf of a class is very unlikely. (*Id.*)

6            To obtain a realistic value of the claims, the estimated potential recovery must be adjusted

7    according to the attendant risks at each of the major procedural thresholds of proving liability on the

8    merits at trial, prevailing on an appeal, or obtaining class certification—all three of which Plaintiffs will

9    likely have to prevail to succeed in litigation. (*Id.*, ¶ 38.) With respect to the claims asserted on behalf of

10   the Settlement Classes in this case, there are significant risks that support the reduced compromise

11   amount. (*Id.*) These are discussed in detail in Paragraph 38 of the Setareh Declaration with respect to the

12   Compensatory Claims, the Statutory Penalty Claims, and the PAGA Claim.[5] (*Id.*)

13           On this basis, Plaintiffs estimate the following risk-adjusted values for their claims:

14   - <u>Compensatory Claims</u>: $34,904,042.81 x 50% (chance to certify) x 40% (chance to win at trial) x

15     40% (chance to win on appeal) = $2,792,323.43 risk-adjusted value. (*Id.*, ¶ 39.)

16   - <u>Statutory Penalties</u>: $84,054,000.00 x 33.33% (chance to certify) x 15% (chance to win at trial) x

17     20% (chance to win on appeal) = $840,455.95 risk-adjusted value. (*Id.*)

18   - <u>PAGA Penalties</u>: $431,488.00 risk-adjusted value based upon defenses to underlying claims and

19     the Court's discretion to reduce award in light of other recovery. (*Id.*)

20   These total $4,064,267.37. (*Id.*)

21           For the reasons above, among others, CRST strongly denies any liability and the propriety of

22   _____

23   believed that he could have been eligible for vacation benefits, but he had only worked for CRST for 6
     months. (*Id.*)  The other Plaintiffs, who had worked for CRST (or Gardner before the merger) for longer

24   did not make such claims and appear to have been paid all vested vacation wages upon separation of

25   employment or shortly thereafter.  (*Id.*)  Accordingly, the estimated potential recovery on the vacation
     pay claim here is zero and not listed in the chart.  (*Id.*)  Also, there are no claims for minimum wages for

26   the Expedited Solutions Class, as such claims were carved out in the terms of the Settlement, to leave
     undisturbed the claims of the Amended Piece-Rate Class certified in *Huckaby*. (*Id.*)

27   [5] They are also discussed in Section II.B, *supra*, and Paragraphs 23-34 of the Setareh

28   Declaration.

1   class certification for any reason other than settlement. (*Id.*, ¶ 40.)  Continued litigation of this lawsuit

2   presents Plaintiffs and CRST with substantial legal risks that were (and continue to be) very difficult to

3   assess. (*Id.*)

4           Accordingly, in light of the uncertainties of protracted litigation, the GSA reflects a fair and

5   reasonable recovery for the Settlement Class Members. (*Id.*)  The GSA is, of course, a compromise

6   figure. (*Id.*)  By necessity, it took into account risks related to liability, damages, class certification, and

7   all the defenses asserted by the Defendants as to all such matters. (*Id.*)  Indeed, CRST contends that

8   Plaintiffs would not have recovered any of these amounts, due to their defenses and the likelihood that

9   the Court would not certify class claims. (*Id.*) Moreover, each Settlement Class Member will be given

10  the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater

11  than the benefits they can receive under this Settlement to pursue their own claims. (*Id.*)

12  **III.    THE SETTLEMENT**

13          The following is a summary of the material terms of the Settlement:

14      **A.    THE SETTLEMENT CLASSES**

15          The classes to be conditionally certified for settlement are defined as:

16      Expedited Settlement Class: All California resident truck driver employees who worked
        for CRST as part of what is now known as Expedited Solutions at any time from August
17      10, 2017 through February 29, 2024 (the "Expedited Class Period").  (Agreement, ¶ 9.)

18      Gardner-Dedicated West Settlement Class: All California resident truck driver employees
        who worked for CRST as part of what is now known as Dedicated West at any time from
19      April 6, 2016 though February 29, 2024, (the "Gardner-Dedicated West Class Period").
        (Agreement, ¶ 12.)
20

21      **B.    GROSS SETTLEMENT AMOUNT**

22          Defendants will pay a maximum aggregate of **$4,050,000**. (Agreement, ¶ 13.)  The GSA covers:

23  (1) the Service Awards of $10,000 to each of the Plaintiffs (**$40,000** total) in compensation for having

24  prosecuted the action and undertaken the risk of payment of costs in the event this matter had not been

25  successfully concluded (*Id.*, ¶ 24); (2) Settlement Fund paid to Class Members for their class claims (*Id.*,

26  ¶ 28); (3) the fees and expenses of the Settlement Administrator, expected not to exceed **$100,000** (*Id.*, ¶

27  25); (4) Class Counsel's Attorney Fees and Costs, consisting of attorneys' fees not to exceed **$1,350,000**

28  (1/3 of the GSA), plus costs not to exceed **$35,000**, to compensate Class Counsel for all work performed

1  thus far and all work remaining to be performed in connection with the Settlement (*Id.*, ¶¶ 3, 36); and (5)

2  payroll taxes on any portion of payments to the Settlement Classes or PAGA Aggrieved Employees that

3  constitute wages (*Id.*, ¶ 13). CRST will have no obligation to pay any amount in connection with this

4  Settlement apart from the Gross Settlement Amount. (*Id.*)

5      The GSA is subject to an escalator clause at Paragraph 35 of the Agreement.

6  **C.    SCOPE OF THE CLASS MEMBER RELEASES**

7      Upon CRST's deposit of the GSA with the Settlement Administrator, and except as to the right

8  to enforce the terms and conditions of the Agreement, all Participating Class Members shall be deemed

9  to have fully released the Released Parties from the Released Class Claims. (*Id.*, ¶ 42.)

10     The "Released Parties" are defined at Paragraph 23 of the Agreement.

11     The "Released Class Claims" are defined at Paragraph 21 of the Agreement.

12     The procedure for release of the FLSA claims by Participating Class Members is described in

13  Paragraph 42(a) of the Agreement.

14     Upon CRST's deposit of the GSA with the Settlement Administrator, and except as to the right

15  to enforce the terms and conditions of the Agreement, all PAGA Aggrieved Employees shall be deemed

16  to have fully released the Released Parties from the Released PAGA Claims. (*Id.*, ¶ 43.)

17     The "Released PAGA Claims" are defined at Paragraph 22 of the Agreement**.**

18     Plaintiffs will each additionally provide a general release of claims against the Released Parties

19  with a waiver of their rights and benefits under California Civil Code section 1542. (*Id.*, ¶ 44.)

20  **D.    NOTICE PROCEDURES**

21     If appointed by the Court, ILYM, serving as Settlement Administrator, will send the Notice of

22  Class and PAGA Settlement ("Class Notice"), an initial draft of which is attached to the Agreement as

23  "**Exhibit A**," and perform the requisite tasks and duties, including: maintaining a website that lists key

24  deadlines and has links to the Class Notice, preliminary approval order, motions for preliminary and final

25  approval and for attorneys' fees, and any other important documents in the case; the formatting and

26  printing of the Class Notice and other documents to be mailed to the Settlement Classes (including

27  Spanish translations, if needed); processing and maintaining Settlement Classes' data; updating mailing

28  addresses for members of the Settlement Classes before the initial mailing of the Class Notice;

calculating estimated Individual Settlement Payments; providing declarations regarding administration as may be required by the Court; providing weekly status reports; resolving disputed claims; issuing Individual Settlement Payment checks; tax reporting and managing uncashed checks. (*Id.*, ¶ 40.)

The Class Notice procedures are described in Paragraphs 48-52 of the Agreement.

The Objection procedure is described in Paragraph 66 of the Agreement.

The Exclusion from the Settlement procedure is described in Paragraph 67 of the Agreement.

### E.      PAYMENT OF SETTLEMENT AMOUNTS

Procedures regarding distribution of the GSA are found Paragraphs 57 through 65 of the Agreement.  Specifically, the formulae for calculation of Individual PAGA Payments and Individual Settlement Payments can be found in Paragraphs 60 and 61, respectively.

### F.      TAX TREATMENT

Provisions regarding the tax treatment of payments made under the Settlement are found in Paragraphs 53 through 56 of the Agreement.

## IV.    THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See Newberg on Class Actions* 4th (2002) ("*Newberg*"), § 11.41 (and cases cited therein); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  A class action, however, may not be dismissed, compromised, or settled without the approval of the court.  Fed. R. Civ. P. 23(e).

Judicial proceedings under Rule 23, Federal Rules of Civil Procedure, have led to defined procedures and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") § 30.41. The *Manual*'s settlement approval procedure describes three distinct steps: (1) Preliminary approval of the proposed settlement at an informal hearing; (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) A "formal fairness hearing," or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.  *Id.*, § 30.41.

The procedure, commonly used by federal courts and endorsed by the leading class action commentator, Professor Herbert Newberg, safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests. *See Newberg*, § 11.22 *et seq.* Federal Rule of Civil Procedure Rule 23(e) requires the Court to review and approve a proposed voluntary dismissal, settlement, or other compromise of a certified class's claims. The Ninth Circuit has held that Rule 23(e) also applies to settlements before certification, but in a much lighter form that does not entail "the kind of substantive oversight required when reviewing a settlement binding upon the class." *Diaz v. Trust Territory of Pac. Islands,* 876 F. 2d 1401, 1408 (9th Cir. 1989). Although there has been "some uncertainty" about whether this holding applies in the wake of the 2003 amendments to Rule 23(e), *see, e.g., Lyons v. Bank of Am., NA,* No. C 11-1232 CW, 2012 WL 5940846, at *1, n.1 (N.D. Cal. Nov. 27, 2012), courts in this district continue to follow *Diaz* to evaluate the proposed settlement and dismissal of putative class claims, *see, e.g., Tombline v. Wells Fargo, NA,* No. 13-cv-04567-JD, 2014 WL 5140048, at *2 (N.D. Cal. Oct. 10, 2014). *See also Luo v. Zynga Inc.*, No. 13-cv-00186 NC, 2014 WL 457742, at **3-4 (N.D. Cal. Jan. 31, 2014) (applying *Diaz* to proposed settlement of putative class claims under FLSA and state law).

The decision to approve or reject a proposed settlement is committed to the trial court's sound discretion; a court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion) (citation omitted).

The purpose of the preliminary evaluation of class action settlements is to determine only whether the proposed settlement is within the range of possible approval, and thus whether notice to the class of the settlement terms and conditions and the scheduling of a formal fairness hearing is worthwhile. To grant preliminary approval of this class action settlement, the court need only find that the settlement falls within the range of possible final approval, also described as the "reasonable range." *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal. App.4th 1085, 1089-90 (1994); *In re Traffic Exec. Ass'n-Eastern Railroads*, 627 F.2d 631, 633-34 (2d Cir. 1980); *see also* 4

1    *Newberg*, § 11.25.  In sum, preliminary approval of a settlement and notice to the proposed class (or

2    collective) is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed,

3    noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential

4    treatment to class representatives or segments of the class, and [4] falls with the range of possible

5    approval…"  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

6            The Settlement proposed by the Parties meets the standards for preliminary approval.

7        **A.    NORTHERN DISTRICT PROCEDURAL REQUIREMENTS FOR CLASS
              ACTION SETTLEMENTS**

8

9            This District promulgated *Procedural Guidance for Class Action Settlements*, which instructs

10   that "[t]he motion for preliminary approval should state," among other things, the following:

11        **1.    <u>Any Differences Between the Settlement Class and the Class Proposed in the
                Operative Complaint or Between the Claims Released in the Settlement and
                Those Pled in the Operative Complaint</u>**

12

13           The proposed TAC will be the operative complaint in this Action once it is filed with the Court

14   after all administrative requirements under PAGA have been satisfied. (Setareh Decl., ¶ 20, Ex. 3.)  As

15   part of the Settlement, Plaintiffs agreed to file another letter with the LWDA providing the LWDA with

16   notice, pursuant to Cal. Lab. Code § 2699.3, of all claims being released as part of this settlement,

17   including notice of Plaintiffs' allegation that CRST failed to pay all wages owed based on a rounding

18   policy in effect during the Gardner-Dedicated West Class Period. (Agreement, ¶ 76)  Plaintiffs submitted

19   their Amended Notices to the LWDA on April 26, 2024 and April 19, 2024 (Setareh Decl., ¶ 20, Ex. 2;.)

20   Following exhaustion of the 65-day notice period required under Cal. Lab. Code § 2699.3(a)(2)(A),

21   Plaintiffs will seek leave to file the proposed TAC, which includes all claims being released as part of

22   this Settlement by Plaintiffs, the Gardner-Dedicated West Settlement Class, the Expedited Settlement

23   Class, and the PAGA Aggrieved Employees.  (Agreement ¶ 75; Setareh Decl., ¶ 20, Ex. 3.)  Once the

24   TAC is filed, it will be the operative complaint upon which the Released Class Claims and the Released

25   PAGA Claims are based, and the definition of the Settlement Classes will match the proposed classes in

26   the TAC.  (Agreement ¶¶ 9, 12, 21, 22, 27; Setareh Decl., ¶ 20., Ex. 2, ¶ 20.)  Accordingly, there will be

27   no such differences between the classes and claims released in the Settlement and pled in the Operative

28   Complaint once the TAC is filed.

2.    **Estimate of the Number of Class Members Expected to Submit a Claim**

No claim form is required for each Participating Class Member to receive a proportionate share of the Settlement Fund. (Agreement, ¶ 50.) The Settlement Administrator will calculate and mail an Individual Settlement Payment to each Participating Class Member and an individual PAGA Payment to each PAGA Aggrieved Employee after the close of the opt-out period. (*Id.*) As estimated by CRST at the time the Agreement was executed, there are an estimated 12,680 members of the Settlement Classes. (Setareh Decl., ¶ 35.)  Given the opt-out nature of the Settlement, it is expected that all or nearly all Class Members will participate in the Settlement.

Any checks issued to Participating Class Members and PAGA Aggrieved Employees shall remain valid and negotiable for 180 calendar days after the date they are issued, after which they will be canceled. (Agreement, ¶ 63.)  In the event that any check has not been cashed within 180 calendar days, then such funds will be tendered to the California State Controller's Unclaimed Property Fund, and the Participating Class Members who did not cash their checks will remain bound to the terms of the Settlement. (*Id.*)

3.    **Other Cases Potentially Impacted by the Settlement**

There are five other cases involving claims related to this Settlement.  Those cases are listed for reference below and are discussed in detail in Paragraphs 11, 14, and 41-45 of the Setareh Declaration.

*Huckaby v. CRST Expedited, Inc. et al.*, U.S. District Court for the Central District of California, Case No. 2:21-cv-07766-ODW (PDx).  (Setareh Decl., ¶ 41.)

*Huckaby v. CRST Expedited, Inc. et al.*, California Superior Court for the County of Los Angeles, Case No. 21STCV37657. (*Id.*, ¶ 42.)

*Castro v. Gardner Trucking, Inc.*, U.S. District Court for the Northern District of California, Case No. 4:20-cv-05473-YGR.  (*Id.*, ¶ 43.)

*Ramos v. Gardner Trucking, Inc.*, California Superior Court for the County of San Bernardino, Case No. CIVDS2004038.  (*Id.*, ¶ 43.)

*Matney-Tate v. Gardner Trucking, Inc.*, California Superior Court for San Joaquin County, Case No. STK-CV-UOE-2021-11019. (*Id.*, ¶¶ 11, 14; Agreement, ¶ 72.)

#### 4.     <u>Settlement Administration</u>

Plaintiffs obtained bids from potential third-party settlement administrators ILYM, Simpluris, Inc., and CPT Group. (Setareh Decl., ¶ 46.)  ILYM was selected because they submitted a bid of $59,950, which Class Counsel believes is reasonable in light of Class Counsel's experience in such settlement administration matters and given the work to be done by or potentially required of the Settlement Administrator due to the various Settlement provisions. (*Id.*)  The Settlement Administrator shall maintain a website that lists key deadlines and has links to the Class Notice, preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case. (Agreement, ¶ 40.)

#### 5.     <u>Class Counsel's Lodestar and Multiplier Sought</u>

The Attorneys' Fees requested by Plaintiffs are reasonable and fair because the lodestar for the work performed is $590,462.00 with a multiplier sought of 2.29 would result in an amount of $1,350,000. (Setareh Decl., ¶ 55; Hawkins Decl., ¶ 15.)  The hourly rates are consistent with the prevailing market rates for attorneys of similar experience.  (Setareh Decl., ¶ 53.)

The Attorneys' Fees award amount of up to $1,350,000 accurately reflects the Parties' intent that Counsel for the Settlement Classes shall seek no more than this amount in fees.  (Agreement, ¶¶ 3, 36.) This amount is equivalent to 1/3 of the GSA. (*Id.*)

##### a.     A Reasonable Result Was Achieved on Behalf of the Class

The benefit achieved on behalf of Class Members defines a primary yardstick against which any fee motion is measured. *See Serrano v. Priest*, 20 Cal.3d 25, 49 (1977); *accord Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).  Courts recognize that arm's-length negotiations conducted by competent counsel are prima facie evidence of fair settlements.  The United States Supreme Court held that "[o]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arm's-length bargaining. . . ." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).

The Parties reached a settlement in good faith after negotiating at arm's length with two professional mediators skilled in resolving class action cases, including wage and hour actions.  (Setareh Decl., ¶ 48.)  The Parties thoroughly investigated and evaluated the factual and legal strengths and

1   weaknesses of this case before reaching the Settlement. (*Id.*) The Settlement was reached after extensive

2   investigation and research, thorough calculations and risk evaluation, correspondence between Plaintiffs'

3   counsel and Defendants' counsel, informal exchanges of data and documents—including an evaluation

4   of Class Members' payroll and timekeeping data during the relevant Class Periods—and an exchange of

5   information required to evaluate all potential defenses and damages. (*Id.*) With the information produced

6   by CRST, and the additional detailed data with respect to the class produced for mediation, it was

7   sufficient to permit Plaintiffs' counsel to adequately evaluate the Settlement. (*Id.*)  And, notably,

8   approval of a class action settlement does not require that discovery be exhaustive.  *See*, *e.g.*, *In re*

9   *Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement

10  approved where informal discovery gave the parties a clear view of the strength and weaknesses of their

11  cases).  The fact that settlement results from arm's-length negotiations following "relevant discovery"

12  creates "a presumption that the agreement is fair."  *Linney v. Cellular Alaska Partnership*, No. C-96-

13  3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997).

14          With respect to the claims asserted on behalf of the Settlement Classes in this case, there are

15  significant risks that support the reduced compromise amount (see estimated potential recovery in

16  Section II.C., *supra*.).  (Setareh Decl., ¶¶ 35-38.)

17          As estimated by Defendants at the time the Agreement was executed, there are an estimated

18  12,680 Class Members. (Setareh Decl., ¶ 35.)  The average estimated Settlement Share for each Class

19  Member is $174.19, assuming no Settlement Class Members opt out and the estimated class size does

20  not change. (*Id.*, ¶ 25.)  This amount reflects a fair compromise well within the range of reasonableness.

21  (*Id.*)  Given the strong case that Defendants could bring to bear to challenge certification and liability,

22  this is not an inconsequential sum in these challenging economic times. (*Id.*)  And, confirming the

23  fundamental fairness of the Settlement, the Notice sent out by the Administrator shall also provide each

24  Settlement Class Member's number of Workweeks and estimated Individual Settlement Payment

25  calculated by the Settlement Administrator, which members of the Settlement Classes will have an

26  opportunity to dispute. (Agreement, ¶¶ 40, 70, Ex. A.)

27          **b.      The Experience, Reputation, and Ability of Class Counsel**

28          California law also recognizes the "skill and experience of attorneys" as appropriate criteria for

1   evaluating a fee motion. *Flannery v. California Highway Patrol*, 61 Cal.App.4th 629, 647 (1995);

2   *accord In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 513 (W.D. Pa. 2003) ("skill and efficiency of the

3   attorneys" among fee motion criteria); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCx), 2005

4   U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (considering "the quality of Class Counsel's

5   effort, experience and skill"). Class Counsel has had substantial experience with the causes of action

6   here and has regularly litigated employment law class and collective actions. (Setareh Decl., ¶¶ 4-6;

7   Hawkins Decl., ¶ 13.)

8            c.        **The Effort Required by the Litigation Justifies the Fee**

9            California and federal law also look to the time and labor required in connection with the

10  litigation and settlement of a class and collective action for which final approval is sought. *See Serrano*,

11  20 Cal.3d at 49, *accord Vizcaino*, 290 F.3d at 1048-50. Compared to the reasonable value of the claims,

12  Class Counsel expended substantial effort to reach the Settlement. (Setareh Decl., ¶¶ 7-22, 48-56.)

13           Class counsel expended considerable time and resources in litigating this matter. (*Id.*) The work

14  done by the attorneys working on this case includes communicating with Plaintiffs, drafting pleadings,

15  filing and opposing pleadings and consolidation motions, comprehensive informal requests for

16  production to Defendants, reviewing documents produced by Defendants, working up and drafting two

17  mediation briefs, working with an expert to analyze the data produced by Defendants, attending two

18  mediation sessions with two mediators experienced in resolving wage and hour class actions,

19  coordinating with the Parties and counsel to draft the MOU and long-form Settlement Agreement, and

20  drafting a motion for preliminary approval. (*Id.*, ¶ 56.) The "time and labor" criterion weighs in favor of

21  an award of the requested fees.

22           d.        **The Complexity of the Legal and Factual Issues**

23           California law recognizes that the litigation's general complexity and "difficulty of the questions

24  involved, and the skill in presenting them" are properly considered. *Serrano*, 30 Cal.3d at 49; *accord*

25  *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 245 (2001). Complexity of legal issues was

26  moderate here, though the fee is reasonable, rendering this factor neutral.

27           e.        **Class Counsel Assumed Substantial Risk**

28           The novelty and challenges presented by a class and collective action, as well as the

1    corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly

2    evaluated in connection with a fee motion.  *See Serrano*, 20 Cal.3d at 49; *accord Vizcaino*, 290 F.3d at

3    1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery).  Ninth Circuit and

4    California state courts regard circumstances in which class counsel's work is wholly contingent – as is

5    the case here – as a factor weighing in favor of approving a negotiated fee award that approximates

6    market rates.  *Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33 (2001).  Because of the uncertainty of the

7    outcome in this and other wage and hour litigation undertaken by Plaintiffs' counsel, they took this case

8    with the expectation that a risk enhancement, either in the form of a lodestar multiplier or a percentage of

9    the fund award equivalent thereto, would be available if Plaintiffs prevailed. This expectation stems from

10   the fact that many cases undertaken by Plaintiffs' counsel as putative class actions do not resolve

11   successfully.

12              **6.     Notice Pursuant to the Class Action Fairness Act of 2005**

13          Notice pursuant to section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") to the

14   appropriate federal and state officials is required in this action because this action is a class action and

15   was removed from state court pursuant to the CAFA removal provisions.  28 U.S.C. §§ 1332(d),

16   1453(b).  CRST will provide notice to the appropriate governmental officials within 10 days of the

17   Parties filing the Motion for Preliminary Approval of Class Action Settlement.  (Agreement, ¶ 77.)

18   Pursuant to 28 U.S.C. § 1715(b), the Court may not issue an order granting final approval of the Parties'

19   Settlement earlier than 90 calendar days after the later of the dates on which the appropriate federal

20   official and state officials are served with notice of the proposed Settlement.

21              **7.     Notice to the LWDA Pursuant Cal. Labor Code § 2699(l)(2)**

22          The Agreement provides that on the same date or prior to the date that Counsel for the Settlement

23   Classes files the Motion for Preliminary Approval, Counsel for the Settlement Classes shall additionally

24   file a notice with the LWDA providing the LWDA with notice of the Settlement as required by Cal.

25   Labor Code § 2699(l)(2).  (Agreement, ¶ 76.)  On April 19, 2024, Plaintiffs' Counsel submitted an

26   Amended PAGA Notice for Plaintiff Matney-Tate.  (Hawkins Decl., Ex. 1.)  On April 26, 2024,

27   Plaintiffs' Counsel submitted an Amended PAGA Notice for Plaintiff Amezcua.  (Setareh Decl., ¶ 20,

28   Ex. 2, 3.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 8.   Plaintiffs' Service Awards

Here, the four Plaintiffs each seek a Service Award that may not exceed $10,000.00. (Agreement, ¶ 24; Setareh Decl., ¶ 61; Leuzinger Decl., ¶ 7; Jensen Decl., ¶ 7; Amezcua Decl., ¶ 7; Matney-Tate Decl., ¶ 10.)  These amounts are very reasonable given the risks undertaken by Plaintiffs with their involvement in the Action.  (Setareh Decl., ¶ 61.)  Taking the risk of filing a lawsuit against an employer, particularly one of the magnitude of Defendants, deserves recognition, especially in light of the settlement achieved by Plaintiffs.  (*Id.*)  Additionally, Plaintiffs were actively involved in the litigation and settlement negotiations of this Action, expending considerable effort in advancing the interests of the classes, including participating in two day-long mediation sessions. (Leuzinger Decl., ¶ 9; Jensen Decl., ¶ 9; Amezcua Decl., ¶ 9; Matney-Tate Decl., ¶ 9.) Plaintiffs provided information to counsel before the filing of their various actions; they assisted with mediation (which included conferring with counsel during the preparation for mediations and attendance at the mediations); and regularly conferred with their counsel regarding the case whenever questions arose. (Leuzinger Decl., ¶ 9; Jensen Decl., ¶ 9; Amezcua Decl., ¶ 9; Matney-Tate Decl., ¶¶ 6, 9.) Plaintiffs each contributed dozens of hours of their time to the prosecution of this matter.  (*Id.*)

If the case were lost, Plaintiffs could have been ordered to pay Defendants' costs and even attorneys' fees in this case, which could have been thousands of dollars by the end. (Setareh Decl., ¶ 62; Leuzinger Decl., ¶ 10; Jensen Decl., ¶ 10; Amezcua Decl., ¶ 10.) Plaintiffs also face significant stigma for having participated in a federal class action because such records are easily available online to prospective employers who conduct an online search on a job applicant. (Setareh Decl., ¶ 62; Leuzinger Decl., ¶ 11; Jensen Decl., ¶ 11; Amezcua Decl., ¶ 11.)  These facts, in addition to Plaintiffs' significant contributions to this case, justify the $10,000 enhancement sought for each of them.  (Setareh Decl., ¶ 62; Leuzinger Decl., ¶ 11; Jensen Decl., ¶ 11; Amezcua Decl., ¶ 11; Matney-Tate Decl., ¶ 10.)

### B.   THE SETTLEMENT IS THE PRODUCT OF INFORMED, NON-COLLUSIVE NEGOTIATIONS

The Settlement was reached after informed, arm's-length negotiations between the parties with the help of Hon. Amy D. Hogue (Ret.), a mediator with significant experience mediating employment wage and hour class and collective actions, after a full-day mediation on October 16, 2023. (Setareh

19

Decl., ¶ 18.)  This was only after a prior unsuccessful attempt to settle at a mediation session with a different mediator on June 1, 2022, more than a year before.  (*Id.*, ¶ 15.)  The Parties conducted investigation and discovery allowing them to assess the strengths and weaknesses of the case. (*Id.*, ¶¶ 48, 49, 51.) Plaintiffs' counsel also retained an expert who reviewed and analyzed payroll and timekeeping data prior to the settlement negotiations.  (*Id.*, ¶ 56.) The Parties were able to come to an agreement during the mediation and later signed a Memorandum of Understanding on February 27, 2024. (*Id.*, ¶ 19.)  Accordingly, the Settlement is the product of non-collusive negotiations.

### C.    THE SETTLEMENT HAS NO "OBVIOUS DEFICIENCIES"

The Settlement is substantial and non-reversionary and provides for a payment of **$4,050,000** by CRST, which is, by any account, a significant amount given the value of the claims made by Plaintiffs. (Setareh Decl., ¶ 52.)  The Individual Settlement Payment for each Class Member asserting wage and hour claims will be *pro rata* based on the individual Workweek count for each Class Member divided by the total number of Workweeks for all Class Members, which is a fair way to calculate what each Class Member should receive. (Agreement, ¶ 61.)  There is an analogous formula for PAGA Aggrieved Employees, who are all Class Members by default unless they opt out. (*Id.*, ¶ 60.) If all other amounts sought are awarded, it is estimated that, before taxes, the average Class Member will receive approximately **$168.97**. (Setareh Decl., ¶ 52.)

Defendants do not oppose the Class Representative Service Award (**$10,000**) or the Class Counsel Attorneys' Fees and Costs (up to **$1,350,000** in fees (1/3 of the GSA), plus up to **$35,000** in costs), and regardless, they are subject to Court approval at the Final Approval hearing. (Agreement, ¶¶ 3,  36.)

### D.    THE SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL

The Settlement falls well within the range of possible approval.  To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080.  Following review of the payroll and timekeeping data provided by Defendants and applicable law, Plaintiffs' counsel determined that the maximum value of their unpaid wage and reimbursement claims to be approximately $34,904,042.81 and risk-adjusted all claims to be $4,064,267.37.  (Setareh

Decl., ¶ 38.)  Therefore, the settlement amount is approximately 11.6% of the maximum compensatory damages, and 99.6% of the risk-adjusted recovery (*Id.*)  This is an excellent result, above the amount of many settlements granted final approval by courts within the Ninth Circuit.  *See e.g., Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. Jun. 17, 2015) (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) [(3%]; *In re LDK Solar Secs. Litig.*, No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages").  Of course, it should not be surprising that a settlement yields less than what the class could theoretically have recovered at trial.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes") (citation and internal quotation marks omitted).

The Settlement should be approved because it confers a substantial benefit on Class Members, while proceeding with litigation would impose significant risk with no guarantee of increased benefits.

### 1. Liability Is Contested, and the Settlement Provides Class Members with Substantial Monetary Relief

Plaintiffs' counsel conducted a thorough investigation into the facts of this class action and diligently pursued an investigation of Class Members' claims against Defendants.  (Setareh Decl., ¶¶ 7-22, 48-56.)  Plaintiffs' counsel conducted informal discovery, reviewed Defendants' written policies, including employee manuals and thoroughly reviewed timekeeping and payroll data to create a reliable damage model detailing the number of possible violations at issue. (*Id.*)

For its part, CRST contests liability in the action, are represented by zealous counsel, and are prepared to vigorously defend against these claims if the Action is not settled.

To be sure, if the litigation proceeds, Defendants could face significant liability.  However, while Plaintiffs are reasonably confident of a favorable outcome, there is substantial risk that the evidence and/or legal developments could seriously diminish the value of their and the Class Members' claims.

In light of these risks for all Parties, the Settlement provides the Class Members with a sizeable recovery while mitigating all Parties' risk if the matter were to proceed. (*Id.*)  As such, the Settlement is fair, reasonable, adequate, and is in the best interest of the Classes in light of all known facts and

circumstances, including the risk of the significant delay. (*Id.*)  The Settlement is also in the best interest of judicial efficiency in this case, as it obviously eliminates a lengthy and contested pre-certification class action lawsuit from this Court's calendar. (*Id.*)

### 2.    The Class Release Is Appropriate Given Plaintiffs' Claims

As described above, as part of the Settlement, Class Members will release all claims arising out of or related to the wage and hour claims (including all derivative claims) and the facts and allegations asserted in the TAC once filed. (Agreement, ¶¶ 21, 42, 75.)  These released claims appropriately track the breadth of Plaintiffs' allegations in the Action. (*Id.*)

And, of course, California Class Members have the right to opt out of the Settlement by submitting a Request for Exclusion as described in the Class Notice. (*Id.*, ¶ 67.)  If they do so, they will not release any class claims but, of course, also will not share in the class recovery in that event.  This does not apply to PAGA Aggrieved Employees, who will release the Released PAGA Claims and receive an Individual PAGA Payment regardless of whether or not they opt out of the Settlement. (Agreement, ¶¶ 22, 43, 62.)

### 3.    Class Counsel's Fees Sought Are Consistent with Prevailing Market Rates

As more fully explained above in Section IV(A)(4)(a)-(e), the Class Counsel Award requested by Plaintiff is reasonable and fair, because the lodestar for the work performed is $590,462.00 with a multiplier sought of 2.29 would result in an amount close to the fee award being requested by Plaintiff's counsel. (Setareh Decl., ¶ 55.)  The hourly rates are consistent with the prevailing market rates for attorneys of similar experience.  (*Id.*)

The Counsel for the Settlement Classes fee amount of up to $1,350,000 accurately reflects the Parties' intent that Class Counsel shall seek no more than this amount in fees. (*Id.*, ¶¶ 3, 36.) This amount is equivalent to 1/3 of the GSA. (*Id.*)

### E.    CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS AND COLLECTIVE FOR SETTLEMENT PURPOSES ONLY IS APPROPRIATE

Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Fed. R. Civ. P.

23(c)(1)).  Conditional approval of the class is appropriate where the plaintiff demonstrates

(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three

requirements of Rule 23(b) also is met.  Conditional certification of the settlement class is appropriate

here as all the factors Rule 23 requirements are met.

### 1.    The Numerosity Requirement Is Met

The numerosity requirement is met if the class is so large that joinder of all members would be

impracticable.  *Gay v. Waiters' & Dairy Lunchmen's Union Loc. No. 30*, 489 F. Supp. 282 (N.D. Cal.

1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982).  No specified number of members of class is needed to

maintain a class action. *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d

648 (4th Cir. 1967); *see also Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989), *remanded on

other grounds* 40 F.3d 1155 (11th Cir. 1994); *McNeill v. New York City Housing Authority*, 719 F.Supp.

233 (S.D.N.Y. 1989); *Ellender v. Schweiker*, 550 F. Supp. 1348 (S.D.N.Y. 1982); *Gordon v. Forsyth

Cty. Hosp. Auth., Inc.*, 409 F. Supp. 708, 711 (M.D.N.C. 1975), *aff'd in part, vacated in part*, 544 F.2d

748 (4th Cir. 1976); *Susquehanna Tp. v. H and M, Inc.*, 98 F.R.D. 658 (M.D. Pa. 1983).  However,

numerosity is generally presumed for purposes of class action certification when the proposed class

would have at least 40 members.  *Lapin v. Goldman Sachs & Co*., 254 F.R.D. 168 (S.D.N.Y. 2008).

Here, the estimated count of approximately 12,680 Class Members satisfies the numerosity

requirement. (Setareh Decl., ¶ 35.)

### 2.    Commonality and Typicality Requirements

Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

The commonality requirement has been construed permissively; not all questions of law and fact need to

be common.  *Hanlon*, 150 F.3d at 1019.  Here, Plaintiffs allege that their claims involve common

questions of both fact and law regarding Defendants' alleged failure to abide by state and federal wage-

and-hour law—and Defendants will not object to Plaintiffs' position on this issue solely for the purposes

of the Settlement.

Furthermore, "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims

of the members of the class."  *Fry*, 198 F.R.D. at 468.  "Under the rule's permissive standards,

representative claims are 'typical' if they are reasonably coextensive with those of absent Class

Members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Here, Plaintiffs contend —and, for purposes of the Settlement only, Defendants will not object to Plaintiffs' position—that Plaintiffs' respective claims are essentially identical to all other non-exempt employees as described in the Classes provided in the Settlement and their claims are typical of such workers with the same common issues. (Setareh Decl., ¶¶ 69.)

### 3.    Adequacy of Representation

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469.  For purposes of the Settlement only, Defendants will not challenge Plaintiffs' claim that the adequacy of representation requirement is met here because Plaintiffs claim they have the same interests as the Settlement Classes, there is no conflict between their claims and those of the other Class Members, and Plaintiffs are represented by experienced and competent counsel who have substantial experience in litigating wage-and-hour class actions and who have no known conflict of interest with absent Settlement Class Members. (Setareh Decl., ¶¶ 4-6; Hawkins Decl. ¶ 11; Leuzinger Decl., ¶¶ 1, 3; Jensen Decl., ¶¶ 1, 3; Amezcua Decl., ¶¶ 1, 3; Matney-Tate Decl., ¶ 7.)

### 4.    Class Certification For Settlement Purposes Is Proper Under Rule 23(b)(3)

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification for settlement purposes is proper under one of the three requirements of Rule 23(b).  Here, Defendants agree not to dispute, for purposes of the Settlement only, that certification of the Class is appropriate under Rule 23(b)(3) based on Plaintiffs' claim in the settlement context that "questions of law or fact common to class members predominate over any questions affecting only individual members, and…a class action is superior to other available methods for fairly and efficiently adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). (Agreement, ¶ 32.)

### F.    THE NOTICE IS FAIR AND ADEQUATE

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  A class action settlement notice "is satisfactory if it 'generally describes the terms of

1  the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

2  forward and be heard.'"  *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)

3  (quoting *Mendoza v. Tucson Sch. Dist. No. 1*., 623 F.2d 1338, 1352 (9th Cir. 1980).

4          Here, the Notice of Class and PAGA Settlement (**Exhibit A** to the Agreement) and the manner

5  of notice are "the best notice practicable" as required under Rule 23(c)(2)(B).  All Class Members can be

6  identified, and the Notice of Class and PAGA Settlement will be emailed and mailed directly to each

7  Class Member using First-Class U.S. Mail. (Agreement, ¶¶ 48-49.)  The Class Notices adequately

8  inform Class Members of the nature of the litigation, the essential terms of the Settlement, his or her

9  estimated Settlement Payment and other payments (if any), and how to object to, elect not to participate

10  in the Settlement (for Class Members), or correct the information on which his or her Settlement

11  Payment or other payment (as applicable) is calculated.  (*Id.*, ¶ 40, Ex. A.)  Further, the Class Notice

12  identifies Class Counsel, specifies the amounts of the Class Representative Service Awards, the

13  Attorneys' Fees and Costs that Plaintiffs will seek, and explains how to obtain additional information

14  regarding the Action and the Settlement. (*Id.*)

15          The Settlement Administrator will attempt to locate any Class Members whose Class Notices are

16  returned as undeliverable.  (*Id.*, ¶ 51.)   In sum, the procedures set forth in the Settlement provide the best

17  possible notice to the Class Members.

18          **G.    ILYM SHOULD BE APPOINTED SETTLEMENT ADMINISTRATOR**

19          Plaintiffs propose that the Court appoint ILYM to serve as the Settlement Administrator.  ILYM

20  is experienced in administering wage-and-hour class action settlements and is regularly appointed as a

21  claims administrator by California courts to administer settlements, and their protocols comport with the

22  Northern District Guidelines.  (*See generally* Declaration of Anthony Rogers ("Rogers Decl.").)  Over

23  the last two years, Setareh Law Group has engaged with ILYM 13 times, and James Hawkins APLC has

24  engaged with ILYM 22 times. (Setareh Decl., ¶ 47.)  ILYM's estimated fees for administration of the

25  Settlement to 13,000 class members is $59,950. (Rogers Decl., ¶ 9-10, Ex. C.)  The Parties agree that

26  these estimates are reasonable and adequate to provide the necessary notice of the Settlement to the

27  estimated 12,680 Class Members, while maximizing the NSA distributed to the Classes. (Setareh Decl.,

28  ¶ 46.)  Class Counsel will provide an updated settlement administration expense estimate, if any such

adjustment becomes necessary, at the time Plaintiffs file the motion for final approval. (*Id.*)

**H.    RESIDUAL**

In the event that an Individual Settlement Payment or and Individual PAGA Payment check has not been cashed within 180 calendar days, then such funds will be tendered to the California State Controller's Office Unclaimed Property Fund in the name of Settlement Class Members who did not cash their settlement checks. (Agreement, ¶ 63.)  Thus, the entire NSA will be paid out to participating Settlement Class Members, whether or not they all cash their individual settlement payment checks. (*Id.*) There will be no residual to dispose of.

**I.    PAST DISTRIBUTIONS**

A description of previous class action settlements in which Plaintiffs' counsel were appointed class counsel, final approval was granted, and the settlement funds were distributed is provided at Paragraph 70 of the Setareh Declaration concurrently filed in support of this Motion.

**J.    PROPOSED SCHEDULE**

A proposed schedule is made at Paragraph 71 of the Setareh Declaration.

**V.    CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court grant their joint motion in its entirety and enter an order:  (1) conditionally certifying the Settlement Classes; (2) granting preliminary approval of the Settlement; (3) appointing Plaintiffs as the Class Representatives; (4) appointing Setareh Law Group and James Hawkins APLC as Class Counsel; (5) approving and directing the mailing of the Notice of Class and PAGA Settlement and related materials; (6) appointing ILYM as the Settlement Administrator; and (7) scheduling the final approval hearing for November 19, 2024, or as soon thereafter as is available and convenient for the Court.


DATED:  May 1, 2024                     SETAREH LAW GROUP

                                        */s/ Shaun Setareh*
                                        SHAUN SETAREH
                                        Attorneys for Plaintiffs