Brian D. Chase (SBN 164109)
Ian Silvers (SBN 254646)
isilvers@bisnarchase.com
BISNAR CHASE
1301 Dove Street, Suite 120
Newport Beach, CA 92660
P: 949-752-2999, 800-956-0123
F: 949-752-2777

*Attorneys for Plaintiff and Intervenor,
Marcelino Benitez Castro*

*(Additional Counsel on Next Page.)*

# UNITED STATE DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASPER LEUZINGER, MICHAEL ALLENJENSEN, WILLIAMMATNEY-TATE, and RICARDO AMEZCUA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GARDNER TRUCKING, INC., a California corporation, GARDNER TRUCKINGCONVERSION, LLC, a California Limited Liability Company; CRST EXPEDITED, INC., an Iowa Corporation; CRST THE TRANSPORTATION SOLUTION, INC., an entity of unknown formation; and DOES 1through 50, inclusive,<br><br>Defendants | Case No.: 4:21-cv-04952-YGR<br><br>Consolidated with:<br>4:21-cv-07474-YGR<br>4:21-cv-07741-YGR<br>4:22-cv-06501-YGR<br><br>[Related on July 27, 2021 to Castro v. Gardner Trucking, Inc., N.D. Cal. Case No. 4:20-cv-05473-YGR]<br><br>**SUPPLEMENTAL BRIEF OF INTERVENORS MARCELINO BENITEZ CASTRO AND MARIO RAMOS IN SUPPORT OF MOTION TO INTERVENE**<br><br>DATE: September 3, 2024<br>TIME: 2:00 p.m. |
| MARCELINO BENITEZ CASTRO, on behalf of himself, all others similarly situated, and the general public, and MARIO RAMOS, on behalf of himself and all others similarly situated,<br><br>Intervenors, | |

Richard C. Alpers (SBN 254646)
rca@alperslawgroup.com
ALPERS LAW GROUP, INC.
PO Box 1540
Aptos, CA 95001
P: 831-240-0490
F: 855-870-1129

*Attorneys for Plaintiff and Intervenor,
Marcelino Benitez Castro*

Michael Nourmand, Esq. (SBN 198439)
James A. De Sario, Esq. (SBN 262552)
THE NOURMAND LAW FIRM, APC
8822 West Olympic Boulevard
Beverly Hills, California 90211
Telephone (310) 553-3600
Facsimile (310) 553-3603

*Attorneys for Plaintiff and Intervenor,
Mario Ramos*

Intervenors Marcelino Castro and Mario Ramos (collectively "Intervenors") submit this supplemental brief in support of their Motion to Intervene and to addresses the questions raised by the Court on July 9, 2024. That includes, as was made abundantly clear at the hearing, Leuzinger Plaintiffs have no basis to say this is a fair and reasonable settlement (and it is not) as there is no basis for their claimed damages, made assumptions and picked numbers out of the air that contradict the record. Intervenors seek to help protect the class and aggrieved employees from an unfair and unreasonable settlement. Further, Intervenors request to receive the claimed expert report claimed to support the tentative settlement, so Intervenors can further assist the Court.

**A. The Court Inquired Why The Opt-Out and Objection Process Is Not Sufficient**

To be able to appeal a judgment and/or approval of a class settlement, Intervenors must become a named party through formal intervention or a motion to set aside and vacate the class judgment. *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 272. Thus, objecting is not enough and opting out only protects their personal interest, not the class. Regarding PAGA, if the Leuzinger Action is allowed to add a PAGA claim at this late stage, the California Supreme Court confirmed a plaintiff may intervene to protect his individual PAGA claim and object to a PAGA settlement subject to the Court's consideration. *Turrieta v. Lyft, Inc.* 2024 WL 3611975 *17, footnote 16, and *19.

**B. Insufficient Discovery**

   **1. Meal and Rest Breaks**

Leuzinger Plaintiffs try to justify their 92% *decrease* in total compensatory damages by claiming meal and rest break claims have little value but fail. Although they claim these are preempted, they still give them value. Yet when they found vacation claims had no value, they acknowledged it and assigned $0. Dkt. 104-1 ¶36. They gave meal and rest breaks value as they know they are not $0 claims. Further, while there's potential for FMCSA preemption, there is no binding authority for short haul drivers (under 49 C.F.R. 395.1(e)(1)).[1] 70% of drivers' records provided included mileage for which 59.1% of the shifts

---

[1] While the California Court of Appeals held that the preemption decision applied to short-haul drivers in *Espinoza v. Hepta Run, Inc.,* (2022) 74 Cal.App.5th 44, this court is not bound by it. In fact, even when the California Appellate Court held the preemption decision was not retroactive (*Garcia v. Superior Court,* (2022) 80 Cal. App. 5th 63) the 9th Circuit in *Valiente v. Swift Transportation Co. of Az., LLC* 54 F.4th 581 (9th Cir. 2022) held that it was retroactive and did not defer to the state court decision. See also *Decena*

prior to September 20, 2020 (when short haul air miles increased to 150 miles) were sufficiently short air miles to be short haul drivers, and after September 20, 2020 it was 77.73%. Dkt. 106-2, Exh A p. 12-13. Further, the FMCSA is currently reviewing the preemption issue, petitions for waiver were received (including the California Attorney General), as were public comments (due February 2024), questioning and weighing preemption. So, it is not as clear cut as Leuzinger Plaintiffs claim in drastically reducing the claims.  Also, there is no reason (as it did in 2018) a change now would not be retroactive.

Separately, the lack of investigation and knowledge shown by Leuzinger Plaintiffs' counsel's declarations was further highlighted at oral arguments.  They claim a 15% violation rate each for meal and rest breaks (before reductions for risks). Yet the records provided to Intervenors, show a 51.11% meal and 59.56% of rest violation. Dkt. 106-2 Exh 5, ¶9c, Table 2A and 4A. Intervenors are NOT making assumptions (as Leuzinger Plaintiffs did[2]), they are calculated by an expert using Defendant's records. At the hearing, Defendant's counsel ignored binding authority in claiming violations cannot be shown from records. But when the records do not show a compliant meal break, there is a rebuttable presumption one did not occur. *Donohue v. AMN Servs., LLC*, (2021) 11 Cal.5th 58, 75-78. It is then on Defendant to show one was provided or a premium was paid. *Id,* at 77.  The presumption does not apply to rest breaks, but Defendant required employees to record meal and rest breaks (Silvers Dec. Exhs. 38-39) the logic of allowing a rebuttable presumption can arguably apply to the rest breaks too. Leuzinger Plaintiffs provided no basis for their assumed 15% violation rate and while experts may differ some, this is too large to make sense. The above is separate from that Leuzinger Plaintiffs claim employees worked through parts of meal breaks/were interrupted, increasing the violation rate.  Dkt No. 104-1¶27c.  This is supported by the 33 declarations in support of Castro's Motion for Class Certification Exh. 2 to 34.

**2. Expense Reimbursement**

Leuzinger Plaintiffs calculated damages based on $10/month but provided no basis.  They claim this was a maximum estimate based on the items being used and claims they were not reimbursable (contrary to the evidence they would have if they investigated and protected employee rights) Exh. 40 p.29 On the

---

*v. Allegiant Final Mile*, Inc. 2024 WL 37221 at *4 ("there is no indication in the statute that short-haul drivers are entirely exempt from the HOS regulations.")

[2] They grossly exaggerate time spent on the case as they have only done two mediations but claim close to $600,000 in fees using essentially every attorney in the firms, which has to include duplicating work, all to try and support the reverse auction settlement.

other hand, Castro's expert, using the Consumer Expenditure Survey, noted that through 2021 (when the data provided by Defendant ended) it was $57.66/month, again a large difference.

Separate is discovery obtained by Castro shows they are required to use their personal cellphones for communications and GPS without reimbursement, which Leuzinger Plaintiffs would have known if they investigated. Class members confirm Defendant required use of personal cellphones to communicate with it via calls/texts.[3] That Defendant claims Qualcomm/Maven can be/was used (which is disputed) for this, changes nothing, when Defendant contacted employees on their personal cellphones as confirmed by class members and discovery.[4] Defendant admits it communicated with them using their personal cellphones during work hours. Silvers Dec. Exh. 35. Furthermore, Defendant confirmed Qualcomm can only be used while the vehicle is stopped, contrary to the business model of getting the product to the delivery point, thus requiring Defendant to contact them on their personal cellphones.

Employees were also required to use their cellphones/navigation devices for directions.[5] Defendant admits it has no policy or practice of providing GPS devices and does not provide them. Silvers Dec. Exhs. 36-37.[6] Class Members from different locations confirm being required to use their own phone/devices, not reimbursed and that this was a common practice.[7] Leuzinger Plaintiffs greatly reduced the strong claims as they failed to investigate, instead of accepting the substandard low settlement in a reverse auction to the detriment of the class and for counsel's gain, i.e. fees for little to no work performed.

At the hearing, Defendant argued this claim will fail based on what occurred in *Huckaby v. CRST Expedited, Inc. et al.*, Central District of California, Case No. 2:21-cv-07766-ODW. There are many

---

[3] Silvers Dec. Exhs. 2 ¶15, 3 ¶12, 4 ¶14, 5 ¶15, 6 ¶15, 7 ¶14, 8 ¶14, 9 ¶13, 10 ¶13, 11 ¶13, 12 ¶14, 13 ¶14, 14 ¶14, 15 ¶13, 16 ¶12, 17 ¶14, 18 ¶14, 19 ¶13, 20 ¶14, 21 ¶14, 22 ¶11, 23 ¶11, 24 ¶11, 25 ¶14, 26 ¶13, 27 ¶14, 28 ¶13, 29 ¶13, 30 ¶13, 31 ¶12, 32 ¶14, and 33 ¶12.

[4] Silvers Dec. Exhs. 2 ¶15, 3 ¶12, 4 ¶14, 5 ¶15, 6 ¶15, 7 ¶14, 8 ¶14, 9 ¶13, 10 ¶13, 11 ¶13, 12 ¶14, 13 ¶14, 14 ¶14, 15 ¶13, 16 ¶12, 17 ¶14, 18 ¶14, 19 ¶14, 20 ¶13, 21 ¶14, 22 ¶14, 23 ¶11, 24 ¶11, 25 ¶11, 26 ¶14, 27 ¶13, 28 ¶14, 29 ¶13, 30 ¶13, 31 ¶13, 32 ¶12, 33 ¶14, and 34 ¶12

[5] Silvers Dec. Exhs. 1 ¶15, 2 ¶17, 3 ¶14, 4 ¶16, 5 ¶17, 6 ¶17, 7 ¶16, 8 ¶16, 9 ¶15, 10 ¶15, 11 ¶15, 12 ¶16, 13 ¶16, 14 ¶16, 15 ¶15, 16 ¶14, 17 ¶16, 18 ¶16, 19 ¶15, 20 ¶15, 21 ¶16, 22 ¶16, 23 ¶13, 24 ¶13, 24 ¶13, 25 ¶16, 26 ¶15, 27 ¶16, 28 ¶15, 29 ¶15, 30 ¶15, 31 ¶12, 32 ¶15 and 33 ¶14.

[6] Defendant's 30(b)(6) witness Mr. Sandridge later claimed the onboard system was used for navigation, but is contradicted by the May 2021 responses and September 2022 supplemental responses to Special Interrogatory No. 20 that were not changed even after his deposition. Silvers Dec. ¶40 and 42.

[7] Silvers Dec. Exhs. 1 ¶16, 2 ¶18, 3 ¶15, 4 ¶17, 5 ¶18, 6 ¶18, 7 ¶17, 8 ¶17, 9 ¶16, 10 ¶16, 11 ¶16, 12 ¶17, 13 ¶17, 14 ¶16, 15 ¶16, 16 ¶14, 17 ¶17, 18 ¶17, 19 ¶16, 20 ¶16, 21 ¶17, 22 ¶17, 23 ¶14, 24 ¶14, 25 ¶14, 26 ¶17, 27 ¶16, 28 ¶17, 29 ¶16, 30 ¶16, 31 ¶16, 32 ¶13, 33 ¶16 and 34 ¶15.

differences for the related entity (of different drivers with a different PMK). *Huckaby* did not address GPS use. There were no declarations of class members and only depositions of plaintiff and a PMK. Defendant claimed *Huckaby* and other cases (factually different) support that whether there was a need to use phones is an individual inquiry that precluded class certification as it was a choice. Exh 40 P. 32-33 and 35**.** Defendant is asking the court to rely on other cases, which are factually distinguishable, on a fact specific issue and abdicate its own judgment and blindly follow those other cases.

### 3. Off-The-Clock

As addressed at the hearing, Page 22 of the Setareh Dec. contends before reducing for claimed risks, it used 15 minutes per week off-the-clock (i.e. 3 minutes per day). Yet it claimed significantly more off-the-clock work: 5 minutes walking from their car to the Shipping and Receiving Desk where they get schedules, 5 minutes completing paperwork, walking to the yard, and taking up to 30 minutes inspecting the vehicles before they can clock in. Dkt 1-04-1 ¶23(a). So at least 40-45 minutes in one day, yet they contend the amount was 15 minutes/week, which does not account for 5-8 minutes for the system to boot up. Dkt 1-04-1 ¶23(b). They did not investigate and instead agreed to a substandard settlement without a basis and are trying to justify that by adjusting numbers to fit the settlement and contradicting their own statements. This is separate from time spent working through meal breaks, owed regardless of any FMCSA preemption issues since they are recording meal breaks but still working. This can be addressed with a survey expert and sampling (as addressed in Castro's Motion for Class Certification). Leuzinger Plaintiffs claim interrupted meal breaks (Dkt. 104-1 ¶27c), but again give no value to this.

As the Court repeatedly asked during the hearing, how did they come up with the numbers used for analysis? That is a mystery. The Court can see that class members show the numbers are significantly higher, which Leuzinger Plaintiffs would have known if they properly investigated so that a fair and reasonable settlement would occur. Instead, they expect the Court to assume their numbers (even when contradicted by their own declaration) are correct. The class and aggrieved employees deserve better than this so that their rights are fairly protected and represented.

### 4. Rounding Claim

Leuzinger Plaintiffs use 7.5 minutes/week of rounding but have no basis. Counsel stated they used this as they claimed rounding was to the quarter hour and that was the maximum amount that could be

rounded on one entry (yet they used this per week). Silvers Dec. Exh. 40 P. 28-29. Rounding can be calculated by looking at time and pay records, but this was not done. They provided no basis for why they even contend there was rounding. Their motion just says Defendant rounded time down more than they rounded up (not citing a policy, practice, class member support or even data on that). Dkt. 104-1 ¶24. Under *Camp v Home Depot U.S.A., Inc*. (2022) 84 Cal.App.5th 638, 660[8], the court held employers are not permitted to round and even if the rounding policy is neutral, they must pay for all time worked. More recently, in *Woodworth v. Loma Linda University Medical Center* (2023) 93 Cal.App.5th 1038, 1056 the court called into question the efficiencies of rounding given the advances in technology to precisely capture work time and found since employers can capture the exact minutes worked, they must pay for all time worked regardless of a rounding policy. Leuzinger Plaintiffs fail to address these cases and how they evaluated rounding.

**C. Claimed Value After Reduction Supports A Lack Of A Fair And Reasonable Settlement.**

Defendant contends the settlement is fair and reasonable in part based on the alleged value of the claims (which as noted above are not based on data or investigation) after being reduced for risks of success at certification, appeal and trial. Yet the amount they created shows they just adjusted numbers to make things match. After the reductions, it equals $4,064,267.37 (i.e. only $14,267.37 more than the settlement amount). It is highly unlikely they somehow were able to get essentially 100% of the claimed damages after reducing the arbitrary compensatory damages to 8% and penalties to 1% (Dkt. 104-1 ¶39).

**D. The Class Definition Improperly Includes Weeks Drivers Worked As Yardsmen.**

At the hearing, Leuzinger Plaintiffs and Defendant confirmed their tentative settlement only includes drivers and ***not*** yardsmen (represented in Ramos' PAGA case). Yet Leuzinger Plaintiffs stated a lot of the drivers switched roles during the class period and were not just yardsmen. Silvers Dec. Exh. 40 p.20. Thus, to the extent the court at any time in the future agrees to proceed with the settlement, the definitions should be clarified (including in any class notice) that it is for weeks putative class members worked as drivers, not just for anyone who worked during the class period at some point as a driver.

DATED: August 6, 2024         BISNAR|CHASE LLP/THE NOURMAND LAW FIRM, APC

*Ian M. Silvers*
Brian D. Chase
Ian M. Silvers
Michael Nourmand

---

[8] Petition for review granted 2/1/23; citeable for persuasive value/establishing conflict in authority.