Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
Jose Maria D. Patino, Jr. (SBN 270194)
jose@setarehlaw.com
Tyson Gibb (SBN 339154)
tyson@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Boulevard, Suite 430
Beverly Hills, CA 90212
Phone: 310-888-7771
Fax: 310-888-0109

Attorneys for Plaintiffs Kasper Leuzinger,
Michael Allen Jensen and Ricardo Amezcua
(*additional counsel on next page*)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASPER LEUZINGER, MICHAEL ALLEN JENSEN, and WILLIAM MATNEY-TATE, and RICARDO AMEZCUA, on behalf of themselves and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>GARDNER TRUCKING, INC., a California corporation; GARDNER TRUCKING CONVERSION, LLC, a California Limited Liability Company; CRST EXPEDITED, INC., an Iowa Corporation; CRST THE TRANSPORTATION SOLUTION, INC., an entity of unknown formation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 4:21-cv-04952-YGR<br>Consolidated with:<br>4:21-cv-07474-YGR<br>4:21-cv-07741-YGR<br>4:22-cv-06501-YGR<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**PLAINTIFFS KASPER LEUZINGER'S, MICHAEL ALLEN JENSEN'S, WILLIAM MATNEY-TATE'S SUPPLEMENTAL BRIEFING** |

**JAMES HAWKINS APLC**
James R. Hawkins, Esq. (#192925)
Gregory Mauro, Esq. (#222239)
Michael Calvo, Esq. (#314986)
Lauren Falk, Esq. (#316893)
Ava Issary, Esq. (#342252)
9880 Research Drive, Suite 200
Irvine, CA 92618
Tel.: (949) 387-7200
Fax: (949) 387-6676
Email: James@jameshawkinsaplc.com
Email: Greg@jameshawkinsaplc.com
Email: Michael@jameshawkinsaplc.com
Email: Lauren@jameshawkinsaplc.com
Email: Ava@jameshawkinsaplc.com

Attorneys for Plaintiff WILLIAM MATNEY-TATE,
Individually and on behalf of all others similarly situated.

**PLAINTIFFS' SUPPLEMENTAL BRIEFING**

1   Plaintiff Kasper Leuzinger, Michael Allen Jensen, Ricardo Amezcua, and William Matney-Tate
2   ("Plaintiffs") hereby respectfully submit this Supplemental Briefing.

3   **I.   Short-Haul Drivers Are Subject to the DOT's Hours of Service, which Preempts CA Law**

4   Federal regulations may preempt state law just as fully as federal statutes. An agency may preempt
5   state law through regulations that are within the scope of its statutory authority and that are not arbitrary.
6   *Espinoza v. Hepta Run, Inc.,* 74 Cal.App.5th 44, 54 (2022) (citing *Washington Mutual Bank v. Superior*
7   *Court* 95 Cal.App.4th 606, 612 (2002); *accord Louisiana Public Service Comm'n v. FCC* 476 U.S. 355,
8   369 (1986) ("Pre-emption may result not only from action taken by Congress itself; a federal agency acting
9   within the scope of its congressionally delegated authority may pre-empt state regulation")). A federal
10  agency's preemption determination based on interpretations of its own regulations and of the statutory
11  scheme it administers should be accorded substantial deference. *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019)
12  (courts should defer to agency's reasonable reading of "genuinely ambiguous" regulations); *Chevron,*
13  *U.S.A. v. Natural Res. Def. Council* 467 U.S. 837, 844 (1984) ("considerable weight should be accorded
14  to an executive department's construction of a statutory scheme it is entrusted to administer"); *Washington*
15  *Mutual Bank*, 95 Cal.App.4th 606, 620, fn. 5 (2002) ("[a]n agency's construction of its own regulations is
16  entitled to substantial deference"); *see also Zubarau v. City of Palmdale* 192 Cal.App.4th 289, 306
17  (2011) ["[a]n agency declaration of preemption can preempt unless the authorizing statute or legislative
18  history of the statute is to the contrary"].) Lastly, the Ninth Circuit has already issued precedential
19  authority, which is binding on this court, when it affirmed that Congress had explicitly given the FMCSA
20  authority to void state laws in accordance with 49 C.F.R. § 187(f) allowing the FMCSA to halt enforcement
21  of California's meal and rest break rules, regardless of when the underlying conduct occurred. *Valiente v.*
22  *Swift Transp. Co. of Ariz., LLC* 54 F.4th 581, 585 (9th Cir. 2022).

23  In 2018, the Federal Motor Carrier Safety Administration ("FMCSA") determined that California's
24  meal and rest break laws are preempted by the federal regulations for property-carrying commercial drivers
25  covered by the U.S. Department of Transportation ("DOT") Hours of Service regulations ("HOS") under
26  49 U.S.C. § 31141 because: (1) they are more stringent than the DOT's hours or service regulations; (2)
27  they have no safety benefits that extend beyond those already provided by the Federal Motor Carrier Safety
28  Regulations; (3) they are incompatible with the federal hours of service regulations; and (4) they cause an

1  unreasonable burden on interstate commerce.  A March 2019 legal opinion from the FMCSA concluded
2  that its original preemption decision under Section 31141 "precludes courts from granting relief pursuant
3  to the preempted State law or regulation at any time following issuance of the decision, regardless of
4  whether the conduct underlying the lawsuit occurred before or after the decision was issued, and regardless
5  of whether the lawsuit was filed before or after the decision was issued." *See* Federal Motor Carrier Safety
6  Administration Legal Opinion of the Office of the Chief Counsel, dated March 22, 2019.

7      This applies to short-haul drivers. "It is undisputed that certain hours of service rules apply to short-
8  haul drivers, such as the daily limits on driving time and the daily and weekly limits on on-duty time. Thus,
9  the HOS rules, as a general matter, apply to short-haul drivers. The fact that those drivers are exempted
10  from one rule does not remove them from the universe of drivers subject to the hours of service rules, and
11  it is not reasonable to read the language of the order to suggest they are." *Espinoza*, 74 Cal.App.5th at 56.

12      In fact, this very Court has already concluded the default rule is that the HOS regulations "'apply
13  to all motor carriers and drivers.'" *Decena v. Allegiant Final Mile, Inc.* 2024 U.S. Dist. LEXIS 477, * 9-
14  10 (N.D. Cal. Jan. 2, 2024) (agreeing that *Espinoza*'s interpretation of the federal HOS comports with a
15  plain reading of 49 C.F.R. § 395.3). Other federal courts have also reached this conclusion as well. *See
16  also Herrera v. Flowers Baking Co. of Modesto, LLC* 2024 U.S. Dist. LEXIS 94442 (E.D. Cal. May 28,
17  2024) (applying *Espinoza* and finding that short-haul drivers are generally subject to the DOT's Hours of
18  Services Rules); *Salter v. Quality Carriers, Inc*. No. 2021 U.S. Dist. Lexis 213111, *28 (C.D. Cal., Oct.
19  27, 2021) ("Plaintiff has failed to demonstrate that the FMCSA's Order does not apply [to] short haul
20  drivers"); *Robinson v. Chefs' Warehouse, Inc*., 2019 U.S. Dist. Lexis 154383, *12 (N.D. Cal. Sept. 10,
21  2019) ("Plaintiffs have not shown, however, that the Order excludes short haul drivers").

22      Accordingly, the FMCSA's preemption order and the DOT's HOS apply to all of Defendants'
23  short-haul drivers, and, as a result, California meal and rest break requirements do not apply to them.

24  **II.     Proposed Intervenors Cannot Intervene as PAGA Representatives Under *Turrieta v. Lyft***

25      Intervenors asked for this Court to await the then-pending decision of the California Supreme
26  Court in *Turrieta v. Lyft, Inc.*, Case No. S271721, which would decide whether the plaintiff-aggrieved
27  employee in a PAGA representative action had the right to seek intervention in the PAGA action of
28  another employee, to move to vacate a judgment entered, or to require a court to receive and consider

objections to a proposed settlement of that action.  The California Supreme Court has answered that question with a resounding denial:

> [W]e hold that an aggrieved employee's status as the State's proxy in a PAGA action does not give that employee the right to seek intervention in the PAGA action of another employee, to move to vacate a judgment entered in the other employee's action, or to require a court to receive and consider objections to a proposed settlement of that action.

*Turrieta v. Lyft, Inc.*, No. S271721, 2024 WL 3611975, *25 (Cal. Aug. 1, 2024).  Mario Ramos, solely a proxy for the State in a PAGA action, cannot intervene in this action as a matter of law since he only has standing to seek intervention in his representative capacity for the State.  To the extent that Marcelino Castro seeks to intervene in Plaintiffs' Action as to the PAGA claims, he is also barred from doing so.

**III.   Plaintiffs' Valuation of Claims and Exposure Analysis**

The claims and defenses and analysis of potential recovery was discussed in detail in the Declaration of Shaun Setareh filed in support of the Motion for Preliminary Approval.  (ECF 104-1.) For ease of reference, Plaintiffs direct the Court's attention to where the claims and defenses and assessment of damages, including the risks supporting discount, were discussed in detail therein:

- Plaintiffs' Claims and Defendants' Defenses:      ECF 104-1 at 11-21, ¶¶ 23-34.
    - Unpaid Wages:                              ECF 104-1 at 11-17, ¶¶ 23-26.
    - Meal Break and Rest Break Violations:      ECF 104-1 at 17-18, ¶¶ 27-28.
    - Unreimbursed Expenses:                     ECF 104-1 at 18-20, ¶¶ 29-30.
    - Unpaid Vested Vacation Wages:              ECF 104-1 at 19-20, ¶¶ 23-26.
    - Derivative Claims:                         ECF 104-1 at 20-21, ¶¶ 33-34.
- Plaintiffs' Assessment of Damages:             ECF 104-1 at 21-27, ¶¶ 35-39.
    - Plaintiffs' Estimated Potential Recovery:  ECF 104-1 at 21-23, ¶¶ 35-37.
    - Risks Supporting Discount:                 ECF 104-1 at 23-27, ¶¶ 38-39.

Plaintiffs did not retain an "expert" to produce a report in which an expert opinion was expressed to interpret the numerical analysis of the data.  Instead, the time and payroll records spreadsheets produced by Defendants were simply numerically analyzed by a data analyst proficient in Excel to tally the number of workweeks, shifts, and number of putative class members whose employment was terminated within the 3-year statute of limitations, number of PAGA Members (putative class members

3

**PLAINTIFFS' SUPPLEMENTAL BRIEFING**

1    within the 1-year statute of limitations), average number of shifts per workweek, etc.

2         To these raw numbers tallied from the data, Plaintiffs applied various assumptions to *estimate*

3    their potential recovery for each claim.   The assumed violation rates were chosen to be *higher* than

4    expected to ensure that if the Gross Settlement Amount were found to be reasonable after applying the

5    discounts attributable to the risks involved in prosecuting the case—*i.e.*, to certify a class, to prevail at

6    trial, and then to prevail upon any appeal—then the Gross Settlement Amount would most assuredly pass

7    muster if it were subjected to same analysis using the exact (but lower) violation rates which could be

8    found by rigorous analysis of all data.

9         For example, Intervenors have questioned the application of the 15% violation rate to the meal

10   period and rest period violations to calculate the recovery as found in Plaintiffs' Estimated Potential

11   Recovery chart.  (*See* ECF 104-1 at 22-23.)  As discussed in Section I, above, and in Defendants'

12   supplemental briefing (ECF 124 at 5), California's meal break and rest break laws do not apply to

13   Defendants' short-haul drivers, the same as for their long-haul drivers, since the DOT HOS regulations

14   apply, which preempts California law.  Therefore, in actuality, the meal break and rest break recovery

15   *should be zero*, as the violation rate would be 0%.  If that approach had been taken, this would have

16   yielded a much lower potential recovery that the Court would have found far more palatable.  However,

17   in an abundance of caution, Plaintiffs did not choose use this approach but instead assumed a non-zero,

18   reasonable violation rate to yield an estimated potential recovery greater than what would be expected.

19   Indeed, assuming the 15% violation rate increased the value of meal and rest break claims to be the

20   largest portion of the estimated potential recovery, rather than the smallest.

21        As another example, Plaintiffs assumed reimbursable expenses for personal cell phone use to

22   perform their job duties of $10/month for the purposes of calculating the estimated potential recovery on

23   that claim.  In reality, this would be much lower given the fact that Defendants provided alternatives,

24   such as an onboard computer, which relegated all personal cell phone use for such purposes to being

25   voluntary, and thus, not "necessary" expenditures.  (*See* ECF 104-1 at 18-20, ¶¶ 29-30.)

26        However, once the risk factors were applied to the inflated estimated potential recovery (ECF

27   104-1 at 23-27, ¶¶ 38-39), the value of the compensatory claims was reduced to close to the Gross

28   Settlement Amount.  This means that if the actual potential recovery (reduced by at least $22.5 million

4

PLAINTIFFS' SUPPLEMENTAL BRIEFING

on just the meal and rest break claims alone since the value of those preempted claims would be zero) were subjected to the same risk-factor analysis, the value of the compensatory claims would be much lower than the Gross Settlement Amount.  Accordingly, because the assumptions used to calculate the estimated potential recovery were overestimated, and because the risk-adjusted value of the claims using that estimated potential recovery is on par with the Gross Settlement Amount and, therefore, reasonable (*see* ECF 104-1 at 23-27, ¶¶ 38-39), the Gross Settlement Amount represents a fair, adequate, and reasonable amount to settle the class and PAGA claims released.

### IV.   Amended Settlement Agreement and Revised Proposed Class Notice

As the Court requested, Plaintiffs and Defendants have amended the Settlement Agreement.  (*See* Declaration of Jose Maria D. Patino, Jr. is Support of Plaintiffs' Supplemental Briefing ("Patino Decl.") ¶¶ 3-4, Exs. A, B (the "Amended Settlement Agreement" or "Am. Settlement").)  The Parties are in the process of executing the Amended Settlement Agreement, and once all signatures have been obtained, the fully executed copy will be submitted to the Court.  First, the scope of the Released Claims has been limited to those "arising out of" the claims and facts and allegations asserted in the Complaints and the "related to" verbiage has been removed. (Am. Settlement ¶¶ 21, 22.)  Second, the attorneys' fees sought have been reduced from 33 1/3% to 30% of the Gross Settlement Amount ("GSA"). (*Id.* ¶ 36.)

The Parties have also revised the Notice of Class and PAGA Settlement.  (Patino Decl. ¶¶ 5-6, Exs. C, D (the "Proposed Notice").)  The table of "Your Legal Rights and Options in This Settlement" has been appears alone on the first page, and the modifications to the release language and the amount of attorneys' fees sought is also reflected.  (*Id.*)

**PLAINTIFFS' SUPPLEMENTAL BRIEFING**

Dated: August 5, 2024                    Respectfully submitted,


SETAREH LAW GROUP
JAMES HAWKINS APLC


By    */s/ Jose Maria D. Patino, Jr.*
       Shaun Setareh
       Jose Maria D. Patino, Jr.
       Tyson Gibb
       James Hawkins
       Gregory Mauro
       Michael Calvo

       Attorneys for Plaintiffs individually and on behalf of all
       others similarly situated

**PLAINTIFFS' SUPPLEMENTAL BRIEFING**

## CERTIFICATE OF SERVICE

      I hereby certify that on August 6, 2024 I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, for the Northern District of California using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

Dated: August 5, 2024

                               By: */s/ Jose Maria D. Patino, Jr.*
                                     JOSE MARIA D. PATINO, JR.

**PLAINTIFFS' SUPPLEMENTAL BRIEFING**