# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KASPER LEUZINGER, MICHAEL ALLEN JENSEN, WILLIAM MATNEY-TATE, AND RICARDO AMEZCUA ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,**<br><br>Plaintiffs,<br><br>v.<br><br>**GARDNER TRUCKING, INC., A CALIFORNIA CORPORATION; GARDNER TRUCKING CONVERSION, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; CRST EXPEDITED, INC., AN IOWA CORPORATION; CRST THE TRANSPORTATION SOLUTION, INC., AN ENTITY OF UNKNOWN FORMATION; AND DOES 1 THROUGH 50, INCLUSIVE,**<br><br>Defendants. | **Case No. 4:21-04952-YGR**<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT AND SETTING DEADLINES FOR NOTICE, OBJECTION, EXCLUSION, AND FINAL FAIRNESS HEARING;**<br><br>**DENYING MOTION TO INTERVENE**<br><br>Dkt. Nos. 104; 106; 113 |

Plaintiffs Kasper Leuzinger, Michael Allen Jensen, William Matney-Tate, and Ricardo Amezcua ("Leuzinger Plaintiffs") seek a class action settlement with defendants Gardner Trucking, Inc., a California corporation; Gardner Trucking Conversion, LLC, a California Limited Liability Company; CRST Expedited, Inc., an Iowa Corporation; and CRST The Transportation Solution, Inc. These parties seek to settle on behalf of multiple classes of truck driver employees who worked for defendants. (Dkt. No. 104 at 9.) Proposed intervenors Marcelino Benitez Castro and Mario Ramos are putative class members under the *Leuzinger* settlement, and move to intervene in this action as a matter of right, and in the alternative, permissively, to protect their

interests. (Dkt. No. 106-1 at 1.)

On July 9, 2024, the Court held a hearing on plaintiffs' unopposed (by defendants) motion for preliminary approval of the parties' proposed settlement; for conditional certification of a settlement class in this action; approval of the Class Notice Packet; appointment of Class Representatives, Class Counsel, and the proposed Settlement Administrator; setting a date for the hearing on final approval of the settlement; and proposed intervenors' motion to intervene. (Dkt. No. 123.) Gregory Mauro and Jose M.D. Patino, Jr., appeared for plaintiffs; Jared S. Kramer appeared for defendants; and Ian M. Silvers, and Michael Nourmand appeared for proposed intervenors. The Court also heard argument on proposed intervenors' motion to intervene. (*Id.*) During the hearing, the Court ordered up to five pages of additional briefing from plaintiffs, defendants, and proposed intervenors, on issues discussed at the hearing. (*Id.*)

Having considered all arguments, briefing, the terms of the settlement agreement, the record in this case, and based on the reasons and terms set forth herein, the Court **GRANTS** the parties' motion for preliminary approval of class action settlement and **DENIES** proposed intervenors' motion to intervene.

**I.   BACKGROUND**

   **A.   Procedural History**

On February 6, 2020, proposed intervenor Ramos filed a Private Attorneys General Act ("PAGA") action against defendants[1] in San Bernardino Superior Court. (Dkt. No. 106-3, Ex. 2.) On June 10, 2020, proposed intervenor Castro filed a putative class action, including Fair Labor Standards Act ("FLSA") claims, in Monterey County Superior Court against defendants. (*Id.*, Ex. 3.) On November 20, 2020, plaintiff Amezcua filed a putative class action in Alameda County Superior Court against defendants for various wage and hour claims. (Case No. 4:22-cv-06501, Dkt. No. 1-2 at 5-28.) Amezcua submitted a PAGA Notice to the LWDA on the same date and later filed an amended complaint adding a claim for civil penalties under PAGA on November 18,

---
[1] The court uses the catch-all "defendants" in this order. Many of plaintiffs' and proposed intervenors' suits were initially filed against separate defendants that are now included in the same group of defendants in this, and proposed intervenors' suits.

2

2021. (*Id.*)

On June 28, 2021, plaintiff Kasper Leuzinger filed a putative class action in this Court, alleging the same claims as Amezcua, along with a claim alleging violation of the FLSA for failing to pay all hours worked. (Dkt. No. 1.)

In July, September, and December 2021, the Court consolidated and related the above cases, along with several similar putative class actions against defendants, into one action. (*See* Dkt. Nos. 26, 29; Case No. 20-5473 at 29.) In January 2022, the Court split the consolidated and related action into two separate actions, which the Court refers to as *Leuzinger,* plaintiffs' case, and *Castro,* proposed intervenors' case. (Dkt. Nos. 32, 33.)[2]

In April and June 2022, defendants engaged in mediation sessions with both sets of plaintiffs; the *Leuzinger* plaintiffs, and *Castro* proposed intervenors. Neither mediation led to immediate settlement. (Dkt. No. 106-1 at 10; Dkt. No. 108-1 ¶ 2.)

In or around July 2023, leading up to an October 16 mediation session with Hon. Amy D. Hogue (Ret.), *Leuzinger* plaintiffs' counsel proposed to defendants a settlement value bracket of one (1) to ten (10) million dollars for the mediation session. (Dkt. No. 108-1 ¶ 3; Dkt. No. 106-1 at 2.) Separately, on August 11, 2023, following a meeting with proposed intervenors' counsel, *Leuzinger* plaintiffs' counsel emailed defendants' counsel stating "[p]laintiffs' attorneys have met and conferred and are interested in a global mediation to resolve all matters." (Dkt. No. 106-3, Ex. 21 at 2.)

On August 16, 2024, defendants' counsel emailed plaintiffs' counsel and proposed intervenors' counsel stating that "[b]efore CRST will agree to the mediation," they "would like to confirm that the mediation will be on the same terms to which we previously agreed;" specifically, that "the parties will be entering into" the previously agreed upon monetary settlement bracket. (*Id.*, Ex. 22 at 2.) On August 17, 2023, counsel for proposed intervenor Castro sent an email to plaintiffs' counsel proposing a call to discuss defense counsel's email. (*Id.*, Ex. 23.) On August 18, 2023, counsel for proposed intervenor Ramos responded to defense counsels' email, stating

---

[2] Plaintiff Amezcua's case was consolidated into this case after being removed to this Court on March 2, 2023. (Case No. 4:22-cv-06501, Dkt. No. 33.)

1    among other things that he disagreed with the monetary bracket approach. (*Id.* at Ex. 24.)
2    Defendants' counsel did not respond to these emails. On September 11, 2023, proposed intervenor
3    Castro's counsel emailed *Leuzinger* plaintiffs' counsel requesting confirmation that mediation in
4    October 2023 with Judge Hogue was not going forward. No one responded. (*Id.* at Ex. 25.) He
5    sent another follow-up email on September 14, 2023, and again no one responded. (*Id.* at Ex. 26.)

The mediation then took place between plaintiffs' counsel and defendants, subject to the monetary price bracket that the parties discussed, and without proposed intervenors' counsel. Following mediation, plaintiffs and defendants agreed to resolve this action on a class-wide basis, prior to class certification, pursuant to a proposal by Judge Hogue. (Dkt. No. 108-1 ¶ 6.) Plaintiffs filed a notice of settlement with the Court on January 16, 2024. (*Id.*; Dkt. No. 94.) On May 1, 2024, plaintiffs filed their motion requesting preliminary approval of the settlement. (Dkt. No. 104.)

As noted above, on July 9, 2024, the Court heard argument and ordered additional briefing. The Court also expressed concerns with the presence of the phrase "related to" in the settlement agreement's claims release language, the request for attorneys' fees of 33%, and the complexity of the proposed summary notice. (Dkt. No. 22 at 25:4-17.) Plaintiffs and defendants subsequently submitted an amended settlement agreement (hereafter, the "Settlement Agreement") addressing the Court's concerns. (Dkt. No. 127 ¶¶ 2, 3, Ex. A., Ex. C; Dkt. No. 128 ¶ 3.)

### B. Terms of the Settlement Agreement

Under the terms of the Settlement Agreement, defendants will pay $4,050,000 into a common settlement fund, without admitting liability. This amount includes attorneys' fees and costs, the cost of class notice and settlement administration, the class representative's service award, PAGA penalties, and payroll taxes on the portion of the settlement payments deemed wages.

#### *1. Attorneys' Fees and Costs*

Under the Settlement Agreement, plaintiffs' counsel agreed to seek up to $1,215,000.00 in attorneys' fees and no more than $35,000 in litigation costs. The common settlement fund also includes a provision for up to $100,000 in settlement administration costs; and up to $10,000 to be

4

1 paid to each plaintiff namely Kasper Leuzinger, William Matney-Tate, Michael Allen Jensen, and Ricard Amezcua as an incentive award.

### 2. *Class Relief*

After deductions from the common fund for fees, costs, and service incentive awards, approximately $2,277,500 will remain to be distributed among the participating class members. Class members will be paid pro rata based on the total number of workweeks each worked during the applicable class period. Dividing this amount across the 12,680 participating class members yields an average recovery of approximately $179.61 per class member. The Agreement provides that no amount will revert to defendants.

### 3. *Cy Pres/Remainder*

The Settlement Agreement provides that when checks mailed to participating class members are not redeemed or deposited within 180 calendar days, such funds will be tendered to the State of California Unclaimed Property Fund in the name of Settlement Class Member who did not cash the check.

## II. PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### A. Legal Standard

A court may approve a proposed class action settlement of a class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

### B. Class Definition and Basis for Conditional Certification

The Settlement Agreement,[3] attached hereto as **Exhibit A**, defines two classes:

> Expedited Settlement Class: All California resident truck driver employees who worked for CRST as part of what is now known as Expedited Solutions at any time from August 10, 2017 through February 29, 2024 (the "Expedited Class Period"). (Agreement, ¶ 9.)
>
> Gardner-Dedicated West Settlement Class: All California resident truck driver employees who worked for CRST as part of what is now known as Dedicated West at any time from April 6, 2016 though February 29, 2024, (the "Gardner-Dedicated West Class Period"). (Agreement, ¶ 12.) (collectively, "the Settlement Class").

The proposed classes are the same as in the third amended complaint, which plaintiffs and defendants now move to file as the operative complaint. (*See* Dkt. No. 113.).[4] Notably, as discussed with all parties on the record, the class definition does not include yardsmen. (*See* Dkt. No. 122 at 22:6 – 23:15.)

The Court finds that, for purposes of settlement, plaintiffs have satisfied the requirements of Rule 23(a) as well as the requirements for certification under one or more subsections of Rule 23(b). With respect to numerosity under Rule 23(a)(1), the Settlement Class includes 12,680 members, making it so numerous that joinder of all members is impracticable.

Rule 23(a)(2) commonality requires "questions of fact or law common to the class," though all questions of fact and law need not be in common. *Hanlon*, 150 F.3d at 1026. The focus of this action – whether defendants failed to abide by state and federal wage-and-hour laws – is common to

---

[3] The operative settlement agreement for the purposes of this order is the Amended Settlement Agreement, submitted by plaintiffs on August 7 after the Court highlighted issues with the initial settlement agreement. (Dkt. No. 127, Ex. A.)

[4] Parties move to file a third amended complaint to, in relevant part, add a tenth cause of action for civil penalties pursuant to PAGA, and amend the proposed class definitions. The motion is hereby granted. Plaintiffs shall file the third amended complaint within seven (7) calendar days of this order.

all class members.

Rule 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Plaintiffs and members of the Settlement Class were all California resident truck driver employees of defendants, making plaintiff's claims typical of class members.

With respect to Rule 23(a)(4), the Court finds the representative parties and class counsel have fairly and adequately represented the interests of the Class. No conflicts of interest appear as between plaintiffs and the members of the Settlement Class. Class Counsel have demonstrated that they are experienced and competent counsel with substantial experience litigating wage-and-hour class actions, and therefore adequate to represent the Settlement Class as well.

The Settlement Class further satisfies Rule 23(b)(3) in that common issues predominate and "a class action is superior to other available methods for fairly and efficiently adjudicating" the claims here.

Based on the foregoing, the proposed class is conditionally certified pursuant to Rule 23(c).

### C. Settlement Agreement Appears Fair and Reasonable

The Settlement Agreement is granted preliminary approval pursuant to Rule 23(e)(2). Based upon the information before the Court, the Settlement Agreement falls within the range of possible approval as fair, adequate and reasonable, and there is a sufficient basis for notifying the Class and for setting a Fairness and Final Approval Hearing.

As to the *Hanlon* factors, the Court finds that they indicate the settlement here is fair and reasonable. Several issues would have been difficult to resolve absent settlement, particularly including plaintiffs' unpaid wage claims, unreimbursed expense claims, and derivative claims. (*See* Dkt. No. 104-1 ¶¶ 23-26, 29, 33-34.) These issues involve practices by defendants that are not explicitly accounted for in the relevant statutes and case law, and provide procedural difficulties for plaintiffs. For example, California law regarding plaintiffs' meal and rest break claims may be preempted by federal law, and plaintiffs may be found to be exempt from overtime under California and federal law. Plaintiffs also face significant obstacles to succeeding on the merits of

their minimum wage claims in light of defendants' policies requiring drivers to record all hours worked. (Dkt. No. 104-1 ¶ 38.) Moreover, there is a risk that that establishing liability would require an individualized inquiry that would prevent these issues from being resolved on a class basis. *See Duran v. US Bank Nat'l Ass'n*, 59 Cal.4th 1, 39, n. 33 (2014) (citing *Dilts v. Penske Logistics*, LLC, No. 08-cv-218-CAB (BLM), 2014 WL 305039 (S.D. Cal. Jan. 21, 2014) (dismissing certified off-the-clock claims based on proof at trial)). For example, plaintiffs allege that defendants maintained a policy or practice of requiring plaintiffs and the putative class members to work through meal breaks and rest breaks. Defendants contend that, even if those claims are not preempted, any inquiry into why some employees missed meal and rest breaks would necessarily be individualized.

Further, proceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals. The settlement occurred only after extensive litigation including: motions to dismiss or stay, case consolidations, multiple motions to intervene, and two settlement negotiations conferences with discovery.  Counsel for both parties are highly experienced. The record does not indicate collusion or self-dealing. *See In re Bluetooth*, 654 F.3d at 946-47.

The Settlement Agreement appears to have been the product of arm's length and informed negotiations. The relief provided for the Class appears to be adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreements required to be identified under Rule 23(e)(3)

Moreover, the Settlement Agreement appears to treat Class members equitably relative to each other.

Based on the foregoing, the Court conditionally certifies the class and provisionally appoints Setareh Law Group and James Hawkins APLC as Class Counsel and plaintiffs Kasper

Leuzinger, Michael Allen Jensen, William Matney-Tate, and Ricardo Amezcua as class representatives.

### III. PLAN OF NOTICE, ALLOCATION, AND ADMINISTRATION

#### A. Notice Plan

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The parties' proposed notice plan appears to be constitutionally sound in that plaintiffs have made a sufficient showing that it is: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law.

The Court approves form of the long-form Notice of Proposed Class Action Settlement attached as **Exhibit B** to this Order.[5] This notice is sufficient to inform class members of the terms

---

[5] The amended notice form was submitted after receiving feedback from the Court at the July 9 hearing. (Dkt. No. 127, Ex. C.)

9

of the Settlement Agreement, their rights under the Settlement Agreement, their rights to object to or comment on the Settlement Agreement, their right to receive a payment or opt out of the Settlement Agreement, the process for doing so, and the date and location of the Fairness and Final Approval hearing. The forms of plan of notice are therefore **APPROVED**.

### B.     Plan of Allocation

The Court preliminarily approves the proposed plan of allocation set forth in the motion and the class notices. Class members will receive a Settlement Share unless they submit a valid and timely Opt-Out Form not later than January 10, 2025.

### C.     Settlement Administrator

ILYM is appointed to act as the Settlement Administrator, pursuant to the terms set forth in the Settlement Agreement.

The Settlement Administrator shall distribute the Class Notice according to the notice plan described in the Settlement Agreement and substantially in the form approved herein, no later than October 7, 2024 ("Notice Date"). Proof of distribution of the Class Notice shall be filed by the parties in conjunction with the motion for final approval.

Defendants are directed to provide to the Settlement Administrator the class members' contact data as specified by the Settlement Agreement no later than September 23, 2024.

### D.     Exclusion/Opt-Out

Any class member shall have the right to be excluded from the class by mailing a request for exclusion to the Settlement Administrator no later than January 10, 2025.[6] Requests for exclusion must be in writing and set forth the name and address of the person who wishes to be excluded and must be signed by the class member seeking exclusion. No later than January 24, 2025, class counsel shall file with the Court a list of all persons or entities who have timely requested exclusion from the class as provided in the Settlement Agreement.

---

[6] Such exclusion would not apply to the PAGA claims, per the California Supreme Court's recent holding that aggrieved employees do not have the right to "require a court to receive and consider objections to a proposed settlement of" PAGA actions. *Turrieta v. Lyft, Inc.*, 552 P.3d 835, 867 (2024).

Any class member who does not request exclusion from the Settlement Class as provided above shall be bound by the terms and provisions of the Settlement Agreement upon its final approval, including but not limited to the releases, waivers, and covenants described in the Settlement Agreement, whether or not such person or entity objected to the Settlement Agreement and whether or not such person or entity makes a claim upon the settlement funds.

**E.     Objections**

Any class member who has not submitted a timely request for exclusion from the Settlement Agreement shall have the right to object to (1) the Settlement Agreement, (2) the plan of allocation; and/or class counsel's motion for attorneys' fees and class representative incentive awards by mailing to the Settlement Administrator a written objection and stating whether they intend to appear at the Fairness Hearing, as set forth in the Class Notice, no later than January 10, 2025. Failure to submit a timely written objection will preclude consideration of the class member's later objection at the time of the Fairness Hearing.

**F.     Attorneys' Fees and Class Representative Awards**

Plaintiffs and their counsel shall file their motion for attorneys' fees and for class representative awards no later than November 29, 2024. Each Settlement class member shall have the right to object to the motion for attorneys' fees and class representative awards by filing a written objection with the Court no later than January 10, 2025, as stated in paragraph 8 above.

Plaintiffs shall file a reply brief responding to any timely objection no later than January 24, 2025.

**G.     Fairness and Final Approval Hearing**

All briefs, memoranda and papers in support of final approval of the settlement shall be filed no later than November 29, 2024.

The Court will conduct a Fairness and Final Approval Hearing on Tuesday, February 18, 2025, at 2:00 p.m., to determine whether the Settlement Agreement should be granted final approval as fair, reasonable, and adequate as to the class. The Court will hear all evidence and argument necessary to evaluate the Settlement Agreement and will consider class counsel's motion for attorneys' fees and for class representative awards.

11

Class members may appear, by counsel or on their own behalf, to be heard in support of or opposition to the Settlement Agreement and class counsel's motion for attorneys' fees and class representative awards by filing a Notice of Intention to Appear no later than January 10, 2025.

The Court reserves the right to continue the date of the final approval hearing without further notice to class members.

The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement.

### H. Post-Distribution Accounting

If final approval is granted, the parties will be required to file a Post-Distribution Accounting in accordance with this District's Procedural Guidance for Class Action Settlements and at a date set by the Court at the time of the final approval hearing. Counsel should prepare accordingly.

| Summary of Key Dates | |
|---|---|
| **Event** | **Date** |
| Class data to be provided to Settlement Administrator | September 23, 2024 |
| Class Notice to be sent by | October 7, 2024 |
| Class Counsel to file their motion for fees and costs and Class Representative awards | November 29, 2024 |
| Motion for Final Approval to be filed by | November 29, 2024 |
| Postmark deadline to submit objection or request for exclusion | January 10, 2025 |
| Class counsel and settlement administrator to submit supplemental statements regarding status of notice program, objections, opt-outs | January 24, 2025 |
| Fairness and Final Approval Hearing | February 18, 2025, at 2:00 p.m. |

## IV. MOTION TO INTERVENE

Proposed intervenors bring a motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) and, in the alternative, permissively under Rule 24(b).

### A. Intervention as of Right

Federal Rule of Civil Procedure 24(a) requires evidence of four factors to grant intervention: (1) the motion must be timely; (2) the applicant must claim a significantly protectable interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011). "The party seeking to intervene bears the burden of showing that all the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). "Failure to satisfy any one of the requirements is fatal to the application, and we need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.2003).

Here, the proposed intervenors' interests are identical to plaintiffs' so a compelling showing is required. Proposed intervenors bring forth three primary arguments for intervention. They argue that (i) plaintiffs provide insufficient quantitative analysis to justify the settlement price, (ii) plaintiffs conducted insufficient discovery, and (iii) class members will not be adequately represented because they cannot opt out of a PAGA action. (*See* Dkt. No. 106-1 at 20-22; Dkt. No. 125 at 1-5.)

First, proposed intervenors challenge the assumptions and analysis plaintiffs used to arrive at the settlement amount. For example, they challenge plaintiffs' violation rate assumption of 15% for meal and rest breaks. (Dkt. No. 125 at 2.) Proposed intervenors argue that the data they

13

1   received shows a violation rate of 51.11% for meal and 59.56% for rest violations (*Id.*), and that
2   authority exists supporting a rebuttable presumption that no meal break occurred when records do
3   not show a compliant break.[7] (*Id.*) Plaintiffs support their 15% assumption by providing authority
4   that any California meal and rest break claims for short-haul drivers would be preempted.
5   Therefore, they argue that, if anything, their 15% is an overestimate of success likelihood. (*See*
6   Dkt. No. 126 at 1-2, 4.) They support this analysis by providing strong authority for the
7   proposition that the United States' Department of Transportation's hours of service regulations
8   likely preempts California law. (Dkt. No. 126 at 1-2 (citing *Espinoza v. Hepta Run, Inc*., 74
9   Cal.App.5th 44, 54 (2022) (Federal agency regulations preempt state regulations)); *Valiente v.*
10  *Swift Transp. Co. of Ariz., LLC* 54 F.4th 581, 585 (9th Cir. 2022) (Congress delegated authority to
11  the Federal Motor Carrier Safety Administration ("FMCSA") to halt enforcement of California's
12  meal and rest break rules)). Notably, the Ninth Circuit held in *Valiente* that the FMCSA's
13  preemption determination applied retroactively. *Valiente* 54 F.4th at 585. Although that case did
14  not deal specifically with short haul drivers under 49 C.F.R. 395.1(e)(1), proposed intervenors
15  have provided no reason why preemption would not likewise apply—and apply retroactively—to
16  short haul drivers for the same reasons detailed in *Valiente*. Therefore, plaintiffs' 15% estimate
17  appears reasonable under the circumstances.
18       Plaintiffs provide similar risk-factor–based analysis for their compensatory claims. (*See*
19  Dkt. No. 104-1 at 23-27, ¶¶ 38-39.) Proposed intervenors challenge plaintiffs' estimates for
20  expense reimbursement, minimum wage, and compensation rounding. (Dkt. No. 125 at 2-4.) The
21  expense reimbursement claims face class certification challenges, since parties dispute whether
22  personal cell-phone use was required, and defendants provided equipment that serves the same
23  purpose as personal cell-phones. (Dkt. No. 122 at 34:23-35:3; Dkt. No. 124 at 6.) Therefore, the
24  settling parties reasonably assume it is likely that whether drivers were required to use personal
25  devices may be an individualized question. *See Williams v. J.B. Hunt Transp., Inc*., No. SA CV
26  20-1701 PSG (JDEx), 2021 WL 5816287, at *8 (C.D. Cal. Dec. 7, 2021); *Huckaby v. CRST*

---

[7] Proposed intervenors concede, however, that no such presumption exists for rest breaks. (Dkt. No. 125 at 2.)

14

*Expedited, Inc.*, No. 2:21-CV-07766-ODW (PDx), 2022 WL 17101232, at *8-9 (C.D. Cal. Oct. 3, 2022). Similarly, plaintiffs' minimum wage claims appear difficult to certify because "individualized factual determinations" may be "required to determine whether class members did in fact engage in off-the-clock work" and it is not clear defendants "had actual or constructive knowledge of off-the-clock work performed." *Koike v. Starbucks Corp.*, 378 F. App'x 659, 661 (9th Cir.2010). Here, some class members stated that they never performed work off the clock while others performed some work off the clock. (*See* Case No. 20-5473, Dkt. No. 76 at 6-7).

Plaintiffs' assumptions regarding proposed intervenor's rounding claims are also reasonable. Notably, counsel for proposed intervenors, when moving to certify a class, did not move to certify their rounding claim, casting doubt on their argument plaintiffs under-investigated such claims. (*See generally* Dkt. No. 69.) On the claim itself, California "permits employers to use a rounding policy for recording and compensating employee time as long as the employer's rounding policy does not consistently result[] in a failure to pay employees for time worked" *See's Candy Shops, Inc. v. Super. Ct.*, 210 Cal. App. 4th 889, 901 (2012) (cleaned up).[8] Proposed intervenors have not provided facts supporting an inference that defendants' policy consistently resulted in a failure to pay employees for time worked. Therefore, plaintiff's risk-based calculation regarding the success of these claims, like the other claims at issue, is sufficiently fair and reasonable.

Second, proposed intervenors contend plaintiffs conducted insufficient discovery. The Court is satisfied that plaintiffs received sufficient discovery from defendants in preparation for its mediation with defendants. The discovery included copies of applicable versions of personnel and payroll policies, and relevant payroll and timekeeping data for the putative class. (Dkt. No. 104-1 ¶¶ 15, 48.) Defendants have confirmed that they provided substantially the same discovery to plaintiffs as it did to proposed intervenors in anticipation of their mediation sessions with

---

[8] Proposed intervenors cite a case holding that a there was a triable issue of fact where an employer tracked "the exact time in minutes that an employee worked each shift and those records showed that [employee] was not paid for all the time he worked." (Dkt. No. 125 at 5 (citing *Camp v. Home Depot U.S.A., Inc.*, 84 Cal. App. 5th 638, 300 Cal. Rptr. 3d 548 (2022).)) They have not established such facts here, however.

1  plaintiffs. (Dkt. No. 122 at 12:8-13:11; Dkt. No. 124 at 2 n.2.) Therefore, this argument does not
2  support intervention.
3        Third, proposed intervenors argue that they must be allowed to intervene to protect their
4  interests in a PAGA action. The California Supreme Court has recently foreclosed this argument,
5  holding that "an aggrieved employee's status as the State's proxy in a PAGA action does not give
6  that employee the right to seek intervention in the PAGA action of another employee." *Turrieta v.*
7  *Lyft, Inc.,* 552 P.3d 835, 867 (2024). It also held that aggrieved employees cannot "move to vacate
8  a judgment entered in the other employee's action," or "require a court to receive and consider
9  objections to a proposed settlement of that action." *Id.* Therefore, proposed intervenors have not
10 made a compelling showing to demonstrate inadequate representation. *See Arakaki* 324 F.3d at
11 1086.

### B. Permissive Intervention

Federal Rule of Civil Procedure 24(b) provides for permissive intervention where: (1) independent grounds for jurisdiction exist; (2) the motion is timely; and (3) proposed intervenors' claim or defense shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b); *Perry v. Proposition 8 Official Proponents* 587 F.3d 947, 955 (9th Cir. 2009). Even where all prerequisites are met, a district court has considerable discretion in ruling on a motion for permissive intervention. *In re Benny*, 791 F.2d 712, 721-22 (9th Cir. 1986). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986).

Proposed intervenors have not made a compelling showing required to demonstrate inadequate representation. "When a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has rested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir.1997). Here, proposed intervenors raise the same claims as plaintiffs. The substantive disagreement between plaintiffs and proposed intervenors stems from

16

proposed intervenors' refusal to participate in the cost-bracketed settlement negotiation between plaintiffs and defendants. For reasons provided above, however, the Settlement Agreement adequately represents proposed intervenors' interests. It does not represent the interests of proposed intervenors' *counsel*, but that is not the test. Delaying and potentially undoing the settlement, however, does pose a risk to the interests of proposed intervenors, as members of the class subject to plaintiffs' and defendants' Settlement Agreement. Therefore, the Court finds that the benefits of proposed intervention are outweighed by the efficient resolution of the pending dispute.

Having carefully considered the papers submitted and the pleadings in this action, including supplemental briefing provided by parties and proposed intervenors, and the oral argument on July 9, 2024, and for the reasons set forth above, the Court hereby **DENIES** the motion.

This terminates Docket Nos. 104, 106, 113.

**IT IS SO ORDERED**.

Dated: September 17, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

17