# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASPER LEUZINGER, MICHAEL ALLEN JENSEN, WILLIAM MATNEY-TATE, and RICARDO AMEZCUA, on behalf of themselves and all others similarly situated, | Case No. 4:21-cv-04952-YGR |
| | Consolidated with: |
| | 4:21-cv-07474-YGR |
| Plaintiff, | 4:21-cv-07741-YGR |
| | 4:22-cv-06501-YGR |
| v. | |
| | AMENDED SETTLEMENT AGREEMENT |
| GARDNER TRUCKING, INC., a California corporation; GARDNER TRUCKING CONVERSION, LLC, a California Limited Liability Company; CRST EXPEDITED, INC., an Iowa Corporation; CRST THE TRANSPORTATION SOLUTION, INC., an entity of unknown formation; and DOES 1 through 50, inclusive, | |
| Defendants. | |

## **AMENDED SETTLEMENT AGREEMENT**

This Amended Settlement Agreement ("Agreement")[1] is entered into by and between Plaintiffs, Kasper Leuzinger, Michael Allen Jensen, William Matney-Tate, and Ricardo Amezcua, on behalf of themselves, the putative settlement classes defined in Paragraphs 9 and 12 below (collectively, the "Settlement Classes") and the PAGA Aggrieved Employees defined in Paragraph 16 below, and Defendant, CRST Expedited, Inc., d/b/a CRST The Transportation Solution, Inc., including Gardner Trucking, Inc., Gardner Trucking Conversion, LLC, and CRST Expedited, Inc. (collectively, "CRST"),[2] to settle the wage and hour class actions involving the consolidated cases pending in the U.S. District Court for the Northern District of California under Case No. 4:21-cv-04952-YGR, which have been recaptioned as In re Gardner Trucking Wage and Hour Litigation (the Action). This Agreement is subject to the terms and conditions set forth below and to the approval of the Court. If the Court does not execute and file an order granting Final Approval of the Settlement, or if the associated judgment does not become final for any reason, this Agreement shall be deemed null and void and shall be of no force or effect whatsoever.

### **Recitals**

A.      Plaintiffs are prosecuting the Action on their own behalf and on behalf of the Settlement Classes defined below against CRST. Plaintiffs allege that they and the Settlement Classes were injured as a result of CRST's violation of various wage-and-hour laws. They assert the following claims: (1) failure to provide meal and rest periods under California law; (2) failure to pay minimum wages

---

[1] This Agreement is intended to amend and supersede the prior agreement the Parties entered to settle the Action, which Plaintiffs submitted to the Court for preliminary approval on May 1, 2024 (ECF No. 104-1 at 43-72), in order to clarify the scope of the claims released under its terms, including the Released Class Claims and Released PAGA Claims, as set forth in Section A(21)-(22), below.

[2] As a result of a corporate restructuring, CRST International, Inc. and Gardner Trucking, Inc. merged into CRST Expedited, Inc. on January 2, 2021, which is now known as CRST Expedited, Inc. d/b/a CRST The Transportation Solution, Inc. As of the date of that merger, CRST International, Inc. and Gardner Trucking, Inc. ceased to exist. The former operations of Gardner Trucking, Inc. are now being operated as a separate operating division referred to as CRST Expedited, Inc. d/b/a CRST The Transportation Solution, Inc. – Dedicated West. For ease of reference, this Settlement Agreement refers to these operations as "Dedicated West." Similarly, as a result of the merger, CRST Expedited Inc.'s over-the-road operations are being operated as a separate operating division referred to as CRST Expedited, Inc. d/b/a CRST The Transportation Solution, Inc. – Expedited Solutions. For ease of reference, this Settlement Agreement refers to these over-the-road operations as "Expedited Solutions."

under California law; (3) failure to pay vacation wages under California law; (4) failure to reimburse for necessary business expenses as required by California law; (5) failure to provide accurate written wage statements under California law; (6) failure to timely pay all final wages under California law; (7) engaging in unfair competition under California law; and (8) failure to pay minimum wage for all hours worked under the federal Fair Labor Standards Act (FLSA).

B.    CRST denies Plaintiffs' allegations and any liability to Plaintiffs and members of the Settlement Classes and have asserted defenses to Plaintiffs' claims in the Action.

C.    Arm's-length settlement negotiations have taken place between Counsel for the Settlement Classes and counsel for CRST. The Parties mediated this matter on two separate days. Following the Parties' second mediation, and with the assistance of Plaintiffs' and CRST's chosen mediator, Hon. Amy Hogue (Ret.) (the "Mediator"), on October 16, 2023,[3] the Parties reached this Agreement. The Agreement is the product of the Parties' mediations, as well as subsequent negotiations regarding relevant terms that continued throughout the several months following the Parties' second mediation.

D.    Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving the claims against CRST, according to the terms set forth below, including the value of the Gross Settlement Amount, is in the best interest of Plaintiffs and the Settlement Classes.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees (as defined in Paragraph 23, subject to the approval of the Court, on the following terms and conditions:

## A.    DEFINITIONS

1.    "Action" means the consolidated civil action captioned In re Gardner Trucking Wage and Hour Litigation, which is pending in the U.S. District Court for the Northern District of California under Case No. 4:21-cv-04952-YGR. It includes the following consolidated actions, previously

---

[3] Plaintiffs Leuzinger, Matney-Tate, and Jensen previously participated in an additional full-day, private mediation with CRST on June 1, 2022 with a different mediator, Steven G. Mehta.

captioned as (a) Amezcua v. Gardner Trucking, Inc., et al., under Case No. 4:22-cv-06501-YGR in the U.S. District Court for the Northern District of California; (b) Jensen v. CRST Expedited, Inc., under Case No. 4:21-cv-07741-YGR in the U.S. District Court for the Northern District of California; (c) Leuzinger v. Gardner Trucking, Inc., et al., under Case No. 3:21-cv-04952-TSH in the U.S. District Court for the Northern District of California; and (d) Matney Tate v. Gardner Trucking, Inc., et al., under Case No. 3:21-cv-07474 in the U.S. District Court for the Northern District of California.

2.    "Agreement" or "Settlement" means this Settlement Agreement, which the Parties acknowledge sets forth all material terms and conditions of the resolution of the dispute between them, which is subject to Court approval.

3.    "Attorneys' Fees and Costs" means the fees and litigation costs incurred by Settlement Classes Counsel or any other counsel retained by Plaintiffs and means up to thirty percent (30%) of the Gross Settlement Amount and reimbursement of all approved litigation costs expected not to exceed $35,000.

4.    "Class Representatives" or "Plaintiffs" mean the named Plaintiffs in the Action, Kasper Leuzinger, Michael Allen Jensen, William Matney-Tate, and Ricardo Amezcua.

5.    "Court" means the United States District Court for the Northern District of California.

6.    "Defendant(s)" means CRST Expedited, Inc., d/b/a CRST The Transportation Solution, Inc., Gardner Trucking, Inc., and Gardner Trucking Conversion, LLC (collectively, "CRST").

7.    "Defense Counsel" means Scopelitis, Garvin, Light, Hanson & Feary, P.C.

8.    "Effective Date" means the date when all of the following events have occurred: (a) this Agreement has been executed by the Parties and by Settlement Classes Counsel and Defense Counsel; (b) the Court has issued an order granting preliminary approval to the Agreement; (c) notice has been given to members of the Settlement Classes providing them with an opportunity to opt-out of the Settlement; (d) the Court has held a Fairness Hearing to determine the fairness, adequacy, and reasonableness of the Settlement and has entered a final order and judgment approving this Settlement; and (e) in the event there are written objections filed prior to the Fairness Hearing that are not later withdrawn, the later of the following events: (i) when the period for filing any appeal, writ, or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ, or other appellate

proceeding having been filed; or any appeal, writ, or other appellate proceeding opposing the Settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief, or (ii) any appeal, writ, or other appellate proceeding has upheld the Court's final order with no right to pursue further remedies or relief. In this regard, it is the intention of the Parties that the Settlement shall not become effective until the Court's order approving the Settlement is completely final and there is no further recourse by an appellant or objector who seeks to contest the Settlement.

9. "Expedited Settlement Class" means: All California resident truck driver employees who worked for CRST as part of what is now known as Expedited Solutions at any time from August 10, 2017 through February 29, 2024 (the "Expedited Class Period").

10. "Fairness Hearing" or "Final Approval Hearing" means the hearing at which the Court will determine whether the terms of the Settlement are fair, reasonable, and adequate for the Settlement Classes and meet all applicable requirements for Final Approval.

11. "Final Approval Order" means the order by the Court approving the Settlement Agreement following the Fairness Hearing and entering final judgment.

12. "Gardner-Dedicated West Settlement Class" means: All California resident truck driver employees who worked for CRST as part of what is now known as Dedicated West at any time from April 6, 2016 through February 29, 2024, (the "Gardner-Dedicated West Class Period").

13. "Gross Settlement Amount" means the maximum settlement amount of $4,050,000 payable by CRST. The Gross Settlement Amount includes (a) the Settlement Fund, (b) PAGA Penalties; (c) Settlement Administration Costs, (d) Counsel for the Settlement Classes claims for Attorney Fees and Costs, (e) a Service Award to each Plaintiff as approved by the Court, and (f) payroll taxes on any portion of payments to the Settlement Classes or PAGA Aggrieved Employees that constitute wages. CRST will have no obligation to pay any amount in connection with this Settlement apart from the Gross Settlement Amount.

14. "Individual PAGA Payment" means the individual distribution from the PAGA Penalties to PAGA Aggrieved Employees as described in Paragraph 60, below.

15. "Individual Settlement Payment" means the individual distribution from the Settlement Fund to each Participating Class Member, as described in Paragraph 61, below.

16.     "PAGA Aggrieved Employees" means: All California resident truck driver employees who worked for CRST as part of what is now known as Dedicated West or Expedited Solutions at any time during the PAGA Release Period.

17.     "PAGA Release Period" means the time period from December 3, 2018 through February 29, 2024.

18.     "PAGA Penalties" means the amount allocated to penalties to settle claims alleged under the California Private Attorneys General Act of 2004 ("PAGA"), Labor Code §§ 2698-2699.5, which is $200,000, with 75% allocated to the California Labor and Workforce Development Agency ("LWDA") and 25% allocated to the Settlement Fund for distribution to PAGA Aggrieved Employees, on a pro rata basis as set forth in Paragraph 60, below.

19.     "Participating Class Member(s)" means all members of the Settlement Classes who do not timely and effectively opt out of the Settlement.

20.     "Parties" collectively means Plaintiffs and CRST.

21.     "Released Class Claims" means all wage and hour claims, known or unknown, at law or in equity, which the Named Plaintiffs and the Settlement Classes have or may have, arising out of the wage and hour claims (including all derivative claims) and the facts and allegations asserted in the Complaints, including the claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., Cal. Labor Code §§ 201-204, 223, 225.5, 226.2, 226, 226.7, 227.3, 500, 510, 512, 558, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 2698-99, and 2802, IWC Wage Order No. 9, and claims under the Cal. Business & Professions Code §§ 17200-17204 based on the foregoing. The Released Class Claims do not include the certified claims of the Amended Piece-Rate Class in Huckaby v. CRST Expedited, Inc., pending in the Central District of California under Case No. 2:21-cv-07766-ODW ("Huckaby"), as defined by the Court order granting class certification, in part, dated October 3, 2022 (ECF No. 60), and as amended in the order granting CRST's motion for reconsideration of that order, in part, dated April 10, 2023 (ECF No. 86).

22.     "Released PAGA Claims" means any claims under Cal. Labor Code § 2698, et seq. (the "PAGA claims"), arising out of the facts that were asserted or could have been asserted in the underlying wage and hour claims brought under Cal. Labor Code §§ 201-204, 223, 225.5, 226.2, 226,

226.7, 227.3, 500, 510, 512, 558, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 2698-99, and 2802 during the PAGA Release Period. The Released PAGA Claims do not include the PAGA claims arising out of the claims that have been certified on behalf of the Amended Piece-Rate Class in the Huckaby case identified in Paragraph 21. The Aggrieved Employees of the Gardner-Dedicated West Settlement Class and the Expedited Settlement Class will release all rights under Cal. Civil Code § 1542 as to the Released PAGA Claims only. Released PAGA Claims are limited to those claims arising during the PAGA Period.

23.    "Released Parties" means CRST and all its present and former officers, directors, shareholders, members, agents, employees, representatives, attorneys, parent companies, subsidiaries, divisions, affiliates, related companies, owners, successors, and assigns.

24.    "Service Awards" means the amounts to be requested by the named Plaintiffs as award for their service to the Settlement Classes. Those amounts shall be as follows:

        a.    For Plaintiff, Kasper Leuzinger: $10,000.

        b.    For Plaintiff, William Matney-Tate: $10,000.

        c.    For Plaintiff, Michael Allen Jensen: $10,000.

        d.    For Plaintiff, Ricard Amezcua: $10,000.

25.    "Settlement Administration Costs" means the costs and expenses incurred by the Settlement Administrator in the performance of its tasks and duties as provided by this Agreement, including the mailing of notices, distributing payments, recording opt-outs, and tax reporting costs. Such costs are not expected to exceed $100,000.

26.    "Settlement Administrator" means ILYM Group, Inc., or another mutually acceptable settlement administrator to be selected by the Parties.

27.    "Settlement Classes" means the Gardner-Dedicated West Settlement Class and the Expedited Settlement Class, collectively.

28.    "Settlement Fund" or "Net Settlement Amount" ("NSA") means the Gross Settlement Amount minus court-approved Attorney Fees and Costs, Settlement Administration Costs, Plaintiffs' Service Awards, and the PAGA Penalties.

29.    "Counsel for the Settlement Classes" shall refer to the law firms of:

Setareh Law Group
9665 Wilshire Blvd., Suite 430
Beverly Hills, CA 90212

James Hawkins APLC
9880 Research Drive, Suite 200
Irvine, CA 92618

## B.   NON-ADMISSION OF LIABILITY

30.     By entering into this Agreement, CRST, on behalf of itself and all Released Parties, deny that there is any basis in law or fact to find that they are liable for any of the claims alleged in the Action or  any potential or unknown claims based on facts alleged in the Action, including wage and hour violations, under state and federal law.

31.     CRST specifically denies that any of the Released Parties have engaged in any unlawful or wrongful conduct against Plaintiffs or the Settlement Classes.

## C.   STIPULATION TO CONDITIONAL CLASS CERTIFICATION SOLELY FOR PURPOSES OF SETTLEMENT

32.     For the purposes of this Settlement Agreement and the settlement of this Action only, the Parties agree to certification of this matter as a class action pursuant to Federal Rule of Civil Procedure 23. CRST does not waive, and expressly reserves, the right to challenge the propriety of class or collective action certification, or any other representative treatment of Plaintiffs' claims, for any other purpose, should the Court not certify the Settlement Classes.

33.     Evidence of this Stipulation to certification of a class action for settlement purposes only will be deemed inadmissible for any other purpose in this or any other proceeding.

## D.   TERMS OF SETTLEMENT

34.     **Gross Settlement Amount.** CRST shall fund the Gross Settlement Amount of $4,050,000. The Gross Settlement Amount shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (a) the Released Class Claims and Released PAGA Claims released by Plaintiffs, members of the Settlement Classes and PAGA Aggrieved Employees; (b) Attorneys' Fees and Costs; (c) Settlement Administration Costs; (d) Plaintiffs' Service Awards; (e) payroll taxes on any portion of payments to the Settlement Classes or PAGA Aggrieved Employees that constitute wages; and (f) any other obligations of CRST under this Settlement Agreement. Subject

to the sole exception set forth in Paragraph 35 below, in no event shall CRST pay more than $4,050,000.

35.    CRST represents that as of October 31, 2023, the Settlement Classes had worked an estimated 591,000 workweeks. If it is determined that the total number of workweeks exceeds 591,000 by more than 10% (i.e., if the total number of weeks worked by the Settlement Classes exceeds 650,100 workweeks for the time period extending through October 30, 2023, then either, (a) the Gross Settlement Amount will be increased on a proportional basis by the same number of percentage points above 650,100 (e.g., if there is an 11% increase in the total number of weeks worked by the Settlement Classes through October 30, 2023, CRST will increase the Gross Settlement Amount by 1%); or (b) CRST may elect to end the Class Period on an earlier date at CRST's discretion in order to limit the covered workweeks to no more than 10% above 591,000 in lieu of paying a proportional increase to the Gross Settlement Amount.

36.    Attorneys' Fees and Costs. Counsel for the Settlement Classes shall request that the Court approve an award of attorneys' fees in an amount of up to thirty percent (30%) of the Gross Settlement Amount plus all reasonable litigation costs, expected not to exceed $35,000, subject to Court approval. CRST will not oppose these requests. Attorneys' fees and costs shall be paid out of the Gross Settlement Amount.

37.    The Court's approval of attorneys' fees and costs requested by Counsel for the Settlement Classes is not a material term of the Agreement. If the Court does not approve the amount requested by Counsel for the Settlement Classes for attorneys' fees or costs, or approves a lesser amount, the remaining terms of the Agreement shall remain in force and effect. A denial by the Court of such request for attorneys' fees or costs shall not be construed as a basis from which to abrogate the Agreement.

38.    Service Awards to Class Representatives. Subject to Court approval, CRST will not oppose Plaintiffs' request for Service Awards to be paid to the Named Plaintiffs from the Gross Settlement Amount not to exceed $10,000 each, as compensation for services rendered to the Settlement Classes. Any such Service Award shall be separate from, and in addition to, any payment to which each Plaintiff may otherwise be entitled as a Participating Class Member. Each Service Award shall be allocated as miscellaneous income, which shall not be subject to payroll taxes and withholdings

and will be reported on an IRS 1099 Form. Each Plaintiff shall be solely and legally responsible to pay any and all applicable taxes on their respective Service Award.

39.    The Parties agree that any amount awarded as the Service Award to a named Plaintiff less than the requested amount shall not be a basis for Counsel for the Settlement Classes to void this Agreement nor to appeal that aspect of the District Court's ruling. Should the District Court approve a lesser amount for the Service Awards, the difference shall be part of the Settlement Fund to be distributed to the Participating Class Members.

40.    **Settlement Administration Costs.** Plaintiffs sought bids based on an anticipated settlement class size of approximately 13,000 putative class members and selected ILYM Group, Inc. as the low bidder to be the third-party Settlement Administrator, which will send the Notice of Proposed Class Action Settlement ("Class Notice"), an initial draft of which is attached hereto as "Exhibit A," and perform the requisite tasks and duties, including: maintaining a website that lists key deadlines and has links to the Class Notice, preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case; the formatting and printing of the Class Notice and other documents to be mailed to the Settlement Classes (including Spanish translations, if needed); processing and maintaining Settlement Classes' data; updating mailing addresses for members of the Settlement Classes before the initial mailing of the Class Notice; calculating estimated Individual Settlement Payments; providing declarations regarding administration as may be required by the Court; providing weekly status reports; resolving disputed claims; issuing Individual Settlement Payment checks; tax reporting and managing uncashed checks.

41.    Settlement Fund. After deducting the portion of the Court-approved amount for PAGA Penalties, the Service Awards, Attorney Fees and Costs, Settlement Administration Costs, and payroll taxes on any portion of payments to the Settlement Classes or PAGA Aggrieved Employees that constitute wages from the Gross Settlement Amount, the remaining balance will be distributed to Participating Class Members pro rata based on the total number of workweeks each worked during the applicable class period.

**E.    CLAIMS RELEASED BY THIS SETTLEMENT AGREEMENT**

42.    **Release of Claims by the Settlement Classes.** Upon CRST's deposit of the Gross

Settlement Amount with the Settlement Administrator, and except as to the right to enforce the terms and conditions of this Agreement, all Participating Class Members shall be deemed to have fully released the Released Parties from the Released Class Claims.

a. **Release of FLSA Claims.** Participating Class Members shall be required to affirmatively opt in for purposes of the Fair Labor Standards Act ("FLSA") in order to waive all Released Class Claims falling under the FLSA by endorsing their Individual Settlement Payment checks, which shall contain thereon the following or substantially similar language:

> By endorsing and cashing this check, I agree to the waiver of the wage and hour claims set forth in the Class Notice in In re Gardner Trucking Wage and Hour Litigation, including all claims under the Fair Labor Standards Act ("FLSA"), and hereby affirmatively opt into the FLSA claim and FLSA waiver for purposes of 29 U.S.C. § 216(b).

This FLSA release shall not apply to PAGA Aggrieved Employees who timely submit a valid Request for Exclusion from the Settlement Classes, and this language shall not appear on the checks provided to such an individual for his or her Individual PAGA Payment only.

43.     Upon CRST's deposit of the Gross Settlement Amount with the Settlement Administrator, and except as to the right to enforce the terms and conditions of this Agreement, all PAGA Aggrieved Employees shall be deemed to have fully released the Released Parties from the Released PAGA Claims.

44.     **Mutual Release of Claims by Plaintiffs**

a.     **Release.** In order to settle their claims against CRST in the Action, and as consideration for CRST's payment of the Gross Settlement Amount, their respective Service Awards, and other good and valuable consideration described in this Agreement, Plaintiffs, individually and on behalf of their heirs, executors, administrators, and representatives, shall and do hereby forever release and discharge CRST and the Released Parties from the Released Claims, and any and all other claims, charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs), known or unknown, at law or in equity, which they may now have or may have at the signing of this Agreement, against CRST or the Released Parties arising

out of all transactions, matters, or occurrences between Plaintiffs and CRST prior to the date of final approval of the Settlement. Without limiting the generality of the foregoing, this release shall include, but not be limited to, any and all claims under the (i) Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., as amended; (ii) Title VII of the Civil Rights Act of 1964, as amended; (iii) the Civil Rights Act of 1991; (iv) 42 U.S.C. § 1981, as amended; (v) the Age Discrimination in Employment Act (ADEA), as amended; (vi) the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), as amended; (vii) the Equal Pay Act; (viii) the Employee Retirement Income Security Act, as amended; (ix) the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161, et seq.; (x) the Rehabilitation Act of 1973, as amended; (xi) the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., as amended; (xii) the Civil Rights Act of 1966; (xiii) the National Labor Relations Act, 29 U.S.C. § 151, et seq.; (xiv) the Workers Adjustment and Retraining Notification Act (WARN), 29 USC § 2100 et. seq., as amended; (xv) the California Fair Employment and Housing Act; (xvi) the California Constitution; (xvii) the California Labor Code; (xviii) the California Government Code; (xix) the California Civil Code; and (xx) any and all other federal, state and local statutes, ordinances, regulations, rules and other laws, and any and all claims based on constitutional, statutory, common law or regulatory grounds as well as any other claims based on theories of wrongful or constructive discharge, breach of contract or implied contract, fraud, misrepresentation, promissory estoppel or intentional and/or negligent infliction of emotional distress, or damages under any other federal, state or local statutes, ordinances, regulations, rules or laws. This release is for any and all relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation pay, bonuses, compensatory damages, tortious damages, liquidated damages, punitive damages, damages for pain and suffering, and attorney fees and costs. Finally, Plaintiffs hereby forever release and discharge CRST and the Released Parties from any and all claims for attorney fees and costs arising out of the matters released in this Agreement. This release does not include claims that cannot be released by agreement, including but not limited to workers' compensation claims.

b.    **Section 1542.** Plaintiffs specifically acknowledge that they are aware of and familiar with the provisions of Section 1542, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Plaintiffs, being aware of Section 1542, hereby expressly waive and relinquish all rights and benefits they may have under Section 1542, as well as any other statutes or common law principles of a similar effect. Plaintiffs and CRST may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims and all the claims referenced in this Agreement, but they stipulate and agree that Plaintiffs shall and hereby do fully, finally, and forever settle and release any and all claims against CRST and the Released Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist or previously existed upon any theory of law or equity without regard to the subsequent discovery of such different or additional facts.

45. **Period to Consider Terms of Agreement.** Plaintiffs acknowledge that they are entitled to and have been given 21 days to consider whether to accept the terms of the release given in Paragraph 46 of this Agreement. If Plaintiffs execute this Agreement before the expiration of the 21-day period, they do so voluntarily, upon the advice and with the approval of Counsel for the Settlement Classes, and they expressly and voluntarily waive their right to consider the release set forth in Paragraph 45 for any remaining portion of that 21-day period.

46. **Revocation of Agreement.** Plaintiffs understand that, after executing this Agreement, they have the right to revoke it within seven days after execution. Plaintiffs understand that this Agreement will not become effective and enforceable unless and until the 7-day revocation period has passed. The release provided for in Paragraph 45 by Plaintiffs shall become effective and enforceable as of the Effective Date of this Agreement provided that the Effective Date of this Agreement occurs after the seven-day revocation period has expired.

47. **Waiver of Money or Damages.** Plaintiffs also agree that, to the extent permitted by

law, if a claim is prosecuted in their name against the Released Parties before any court or administrative agency, they waive and agree not to take any award of money or other damages from such proceeding. Plaintiffs agree that, if a claim is prosecuted in their name against Released Parties that, unless otherwise compelled by law, they will immediately request in writing that the claim(s) be withdrawn upon a written request by Defense Counsel.

**F.    NOTICE TO MEMBERS OF THE SETTLEMENT CLASS**

48.    Within 14 days of the Court's issuance of an order granting preliminary approval of the Settlement, CRST shall provide the Settlement Administrator a spreadsheet list identifying all members of the Settlement Classes, including their names, last known addresses, last known telephone numbers, last known email addresses, the number of weeks during which each member of the Settlement Classes was employed by Dedicated West or Expedited Solutions during the applicable Class Period (and, for PAGA Aggrieved Employees, the number of weeks during which they were employed by Dedicated West or Expedited Solutions during the PAGA Period), and the social security number or tax identification number under which all compensation was paid to the member of the Settlement Classes ("Class List"). This information will be provided confidentially to the Settlement Administrator only, and the Settlement Administrator shall treat the information as private and confidential and take all necessary precautions to maintain the confidentiality of the Class List. The Settlement Administrator shall not share the Class List with any other party or counsel for any of the Parties. This information is to be used only to carry out the Settlement Administrator's duties as specified in this Agreement.

49.    Within 10 days of receipt of the Class List, the Settlement Administrator shall send a Class Notice to each member of the Settlement Classes by First Class U.S. Mail and by email.

50.    No claim form is required for each Participating Class Member to receive a proportionate share of the Settlement Fund. The Settlement Administrator will calculate and mail an Individual Settlement Payment to each Participating Class Member and an Individual PAGA Payment to each PAGA Aggrieved Employee pursuant to Paragraph 62, below, after the close of the opt-out period described in Paragraph 67, below.

51.    To provide the best notice practicable, any Class Notice sent to an email address that replies as an invalid or undeliverable email address shall not be relied upon, and the Settlement

Administrator shall solely rely upon the Class Notice concurrently sent by U.S. Mail. If any mailed Class Notice is returned to the Settlement Administrator as non-deliverable with an updated mailing address affixed, it shall be sent by First Class U.S. Mail to the forwarding address affixed thereto. If a Class Notice is returned as undeliverable without a forwarding address affixed thereto, the Settlement Administrator shall attempt to locate a current mailing address for the member of the Settlement Class by skip-tracing and will mail the Class Notice to the updated address identified. If no current address can be located, the Class Notice for that individual will be deemed undeliverable. If a Class Member whose Class Notice was undeliverable by U.S. Mail nevertheless receives the copy of the Class Notice sent to his or her email address, that Class Member may still receive payment under in the Settlement, object to the Settlement, or opt out of the Settlement; however, in order to do so, the Class Member will have the added requirement of updating their mailing address with the Settlement Administrator on or before the deadline to object or to opt out, as described in Paragraphs

52. On the remailing of Class Notices by the Settlement Administrator to an updated mailing address found through skip-tracing or provided by Counsel for the Settlement Classes, the Settlement Administrator shall keep a record of the postmark mailing dates for such re-mailed Class Notices and record all undelivered Class Notices.

## G. EFFECT OF SETTLEMENT UPON TAXES AND EMPLOYER PLANS

53. No Tax Advice & Circular 230 Disclaimer. No provision of this Agreement or other communications or disclosures is, or was intended, to constitute tax advice within the meaning of United States Treasury Department Circular 230 (31 C.F.R., Subtitle A, Part 10, as amended). The Parties further represent they: (1) shall be solely responsible for reporting and paying any applicable federal, state and/or local income tax, employment tax or any other withholding on all taxable income or other benefit they individually receive as consideration exchanged pursuant to this Agreement; (2) have relied exclusively upon their own, independent legal and tax advisors for tax advice in connection with this Agreement; and (3) in keeping with their individual rights to due process, shall not be entitled to rely upon any communication or disclosure by Plaintiffs, CRST, or Parties' counsel to avoid the payment of any assessment, penalty, tax, attorneys' fees, and/or other amounts based on the taxability of any consideration provided or exchanged pursuant to this Settlement Agreement.

54.    The Parties make no representations concerning the taxability, tax treatment, or legal effect of any tax laws on any consideration provided or exchanged pursuant to the Agreement, including any Individual Settlement Payments or any Individual PAGA Payments and that Participating Class Members should consult with their own tax advisors concerning the tax consequences of their receipt of any payment under the Agreement.

55.    For the purpose of calculating applicable taxes for the payment of the Individual Settlement Payments paid to Participating Class Members (excluding any Service Fee Awards to Plaintiffs), the Parties agree that one-third of the Individual Settlement Payments will be allocated to taxable wages, and two-thirds of the Individual Settlement Payments will be allocated to interest, penalties, and liquidated damages and will not be subject to tax withholding. The Settlement Administrator shall be responsible for issuing and providing IRS Forms W-2s and 1099s to Participating Class Members for their Individual Settlement Payments. Accordingly, any applicable withholdings for payroll taxes owed by CRST under this Agreement will be paid and deducted from the Gross Settlement Amount. Unless otherwise specifically set forth herein, Plaintiffs, Participating Class Members and Counsel for the Settlement Classes will be responsible for payment of their own tax obligations, if any. Members of the Settlement Classes who may have questions about their tax liability, if any, should consult independent tax counsel. Except as otherwise provided herein, the Released Parties shall have no liability or responsibility whatsoever for the taxes due by Participating Class Members related to the distribution and payment of the Gross Settlement Amount. Each Participating Class Member shall be responsible for the payment of any taxes due by him or her in connection with any distribution and payment from the Gross Settlement Amount. In addition, the individual receiving the Individual Settlement Payment shall indemnify and hold harmless each of the Released Parties for any taxes related to the distribution and payment of the Gross Settlement Amount.

56.    No Effect on Employer Plans. Neither this Agreement nor any amounts paid under the Agreement will modify any previously credited hours, days, or weeks of service under any program sponsored by CRST for members of the Settlement Classes. Such amounts will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under any of CRST's sponsored programs. The payments made under the terms of this Agreement shall not be applied

retroactively, currently, or on a going forward basis, as any form of compensation for the purposes of any of CRST's programs. CRST retains the right to modify the language of its sponsored programs to effect this intent and to make clear that any amounts paid pursuant to this Agreement are not for "weeks worked," "weeks paid," "weeks of service," or any similar measuring term as defined by any programs for purpose of eligibility, vesting, benefit accrual, or any other purpose, and that additional contributions or benefits are not required by this Agreement. CRST does not consider payments made under the Agreement as "compensation" for purposes of determining eligibility for, or benefit accrual within, any employer-sponsored programs, or any other plan sponsored by CRST.

**H.     DISTRIBUTION OF GROSS SETTLEMENT AMOUNT**

57.     The Settlement Administrator shall establish a Settlement Fund for purposes of administering the Settlement.

58.     Within 30 days following the Effective Date, CRST will deposit the Gross Settlement Amount into the qualifying settlement fund (QSF) account established by the Settlement Administrator, pursuant to Section 468B of the Internal Revenue Code.

59.     CRST is not responsible for paying any interest on the amount deposited, and it is the responsibility of the Settlement Administrator to select and administer the interest-bearing account.

60.     **Formula for Calculating Individual PAGA Payments.** The Parties agree to allocate $200,000 as PAGA Penalties. 75% of the PAGA Penalties (i.e., $150,000) shall be paid to the LWDA.

a.     The remaining 25% of the PAGA Penalties (i.e., $50,000) shall be paid to the PAGA Aggrieved Employees on a pro rata basis, based on the total number of weeks during which each PAGA Aggrieved Employee was employed by Dedicated West or Expedited Solutions during the PAGA Period, based on CRST's records. Absent evidence to the contrary, CRST's records shall be assumed correct for purposes of calculating the number of weeks during which each PAGA Aggrieved Employee was employed, as well as any payments made pursuant to the Agreement.

b.     The sum of the number of weeks during which all PAGA Aggrieved Employees worked as an employee truck driver of Dedicated West or as an Expedited Solutions during the PAGA Period, by all PAGA Aggrieved Employees will be referred to as the "Total PAGA Workweeks."

c.      The amount to be paid per workweek to a PAGA Aggrieved Employee will be calculated by dividing $50,000 by the Total PAGA Workweeks.

61.    **Formula for Calculating Individual Settlement Payments.** The portion of the Settlement Fund to pay Individual Settlement Payments to Participating Class Members shall be determined as follows:

a.      The payment to each individual Participating Class Member will be based on their pro rata share of the Settlement Fund, as determined by the total number of weeks during which each Participating Class Member worked as an employee truck driver of Dedicated West during the Gardner-Dedicated West Class Period or Expedited Solutions during the Expedited Class Period, based on CRST's records. Absent evidence to the contrary, CRST's records shall be assumed correct for purposes of calculating the number of weeks during which each member of the Settlement Classes was employed, as well as any payments made pursuant to the Agreement.

b.      The sum of the number of weeks during which all Participating Class Members worked as either an employee truck driver of Dedicated West during the Gardner-Dedicated West Class Period or as an employee truck driver of Expedited Solutions during the Expedited Class Period by will be referred to as the "Total Class Workweeks."

c.      The amount to be paid per workweek to a Participating Class Member will be calculated by dividing the value of the Settlement Fund by the Total Class Workweeks.

62.    **Distribution of Individual Settlement Payments and Individual PAGA Payments.** Within 15 days after the funding of the QSF or within 45 days of the Effective Date, whichever is sooner, The Settlement Administrator shall distribute the Court-approved Individual Settlement Payments and Individual PAGA Payments by check to the last known mailing address for each Participating Class Member and PAGA Aggrieved Employee.

63.    **Uncashed Settlement Checks.** If any check remains uncashed after 180 days from the date the check is issued, such check(s) will be canceled by the Settlement Administrator. Those funds will be delivered to the State of California Unclaimed Property Fund. The Participating Class Members who do not cash their Individual Settlement Payment checks shall remain bound by the terms of this Agreement.

64. **Distribution of Service Awards and Attorney Fees and Costs.** Within 15 days after the funding of the QSF or within 45 days of the Effective Date, whichever is sooner, the Settlement Administrator shall distribute the Service Awards to each Class Representative and shall distribute the Attorney Fees and Costs to Counsel for the Settlement Classes, as approved and awarded by the Court.

65. **Settlement Administration Costs.** Within 15 days after the funding of the QSF, the Settlement Administrator shall deduct the Court-approved sum for payment of its fee and costs for administering the Settlement pursuant to its terms.

**I.    OBJECTIONS TO AND OPTING OUT OF THE SETTLEMENT**

66. **Objections to the Settlement.** Members of the Settlement Classes wishing to object to the Settlement must submit only to the Court a written and signed objection, postmarked or electronically submitted via PACER at https://ecf.cand.uscourts.gov, within 50 days of the date of initial mailing or remailing of the Class Notice. The postmark date or date of electronic or physical filing will be the exclusive means to determine whether an objection has been timely submitted. Any members of the Settlement Classes objecting to the Settlement must: (1) clearly identify the case name and case number of this Action; (2) must include their name, address, and signature on the objection; and (3) must state the reasons for objecting to the Settlement. All objections will be scanned into the electronic case docket, and the parties will receive electronic notices of filings. Settlement Class Members may also appear at the Fairness Hearing to present any timely submitted objection. Settlement Class Members may submit objections and appear at the Fairness Hearing through their own attorneys, but, if they do so, they are solely responsible for hiring and paying such attorneys. Counsel for the Settlement Classes will not represent any Settlement Class Members with respect to any such objections to this Settlement, and any Settlement Class members who request exclusion from the Settlement will not have standing to object to it.

67. **Exclusion From the Settlement.** Members of the Settlement Classes who wish to exclude themselves from the Settlement must submit to the Settlement Administrator a written letter that must:

(1)    contain the Class Member's name, address, and the last four digits of his or her Social Security Number;

(2)  clearly state the Class Member's request to be excluded from the Settlement and from releasing the Released Class Claims; (3) be signed by the Class Member or his or her lawful representative; and (4) be postmarked within 50 days of the date of initial mailing or remailing of the Class Notice. A request to opt out of the Settlement will be deemed timely if postmarked on or before the 50th day after the initial mailing or remailing of the Class Notice.

68.  Members of the Settlement Classes who timely opt out may not submit an objection to the Agreement.

69.  In the event that 10% or more of the Settlement Classes exercise their right to exclude themselves and opt out of the Settlement, CRST retains the exclusive right, but not the obligation, to withdraw from and terminate the Settlement and return all parties back to their same positions as before the Settlement was reached and the Settlement Agreement was entered into or, alternatively, to reduce the Gross Settlement Amount proportionally by the number of weeks worked for each member of the Settlement Classes who opts out. In the event that CRST exercises its right to withdraw from and terminate the Settlement under the terms set forth in this paragraph, CRST must notify Counsel for the Settlement Classes and the Court in writing of such a decision no later than seven days prior to the date of the Fairness Hearing. In the event of CRST's withdrawal, no party may use the fact that the Parties agreed to the Settlement for any reason. Further, only in the event that CRST exercises its right to withdraw from and terminate the Settlement, CRST shall be solely responsible for the costs of the settlement administration incurred to date.

70.  **Disputes as to Workweeks Allocated.** Members of the Settlement Classes or PAGA Aggrieved Employees who wish to dispute the Workweeks allocated to them in their Class Notice have the option to submit to the Settlement Administrator a written letter that must: (1) contain the individual's name, address, and the last four digits of his or her Social Security Number; (2) include documents or other evidence in support of the individual's challenge to the number of Workweeks allocated to him or her; (3) be signed by the disputing individual or his or her lawful representative; and (4) be postmarked within 50 days of the date of initial mailing or remailing of the Class Notice. A letter of Dispute as to Workweeks Allocated will be deemed timely if postmarked on or before the 50th day after the initial mailing or remailing of the Class Notice. If a valid dispute letter is received timely,

the Settlement Administrator shall review the written explanation and any supporting documentation provided, as well as CRST's records, to resolve any disputes regarding the accurate number of Workweeks. CRST's calculation of Workweeks will be presumed accurate unless clear and compelling documentary evidence has been provided that establishes that a mistake was made by CRST. The Settlement Administrator shall investigate the dispute, request information from CRST as necessary, and determine whether any additional amount is owed to the disputant. The Settlement Administrator's determination as to such disputes shall be final.

**J.    SCHEDULE FOR PRELIMINARY AND FINAL APPROVAL**

71.    The following procedures for obtaining the Court's approval shall be implemented with respect to the Settlement, notice to the Settlement Classes, and all benefits provided under this Agreement:

72.    **Stay of All Litigation.** As of the filing of the motion for preliminary approval of this Settlement, and pending preliminary and final approval of the Settlement, the Parties agree that there will be a stay of all litigation not reasonably necessary for approval by the Court of this Agreement and all terms herein. The Parties additionally agree that all litigation in the separately pending PAGA action filed by Plaintiff Matney-Tate, entitled Matney-Tate v. Gardner Trucking, Inc., pending in California Superior Court for San Joaquin County under Case No. STK-CV-UOE-2021-11019, shall continue to be stayed pending settlement approval proceedings in this Action.

73.    **Request for Approval by the Court.** Counsel for the Settlement Classes will prepare and file a mutually agreeable motion for preliminary approval of this Agreement the applicable deadline set by the Court in the Action. Should the Court grant preliminary approval of the Settlement, Counsel for the Settlement Classes will also prepare and file a mutually agreeable motion for final approval of the Settlement within the applicable deadline set by the Court.

74.    Prior to the Fairness Hearing, the Settlement Administrator shall provide written reports or declarations to the Parties and Parties' Counsel describing, among other things, the process and results of the settlement administration process, the total number of opt-out requests received (both timely and valid or otherwise), the total number of notices of objection received (both timely and complete or otherwise), the total number of disputes received (both timely and valid or otherwise), and

the actual or projected Settlement Administration Costs to date, which report or declarations Plaintiffs may file with the Court prior to the Fairness Hearing.

75.    Notice to State and Federal Officials and Filing of the Third Amended Consolidated Complaint. Within ten days of execution of this Agreement, Counsel for the Settlement Classes shall file another letter with the LWDA providing the LWDA with notice, pursuant to Cal. Lab. Code § 2699.3, of all claims being released as part of this settlement, including notice of Plaintiffs' allegation that CRST failed to pay all wages owed based on a rounding policy in effect during the Gardner-Dedicated West Class Period. Following exhaustion of the 65-day notice period required under Cal. Lab. Code § 2699.3(a)(2)(A), Plaintiffs will file a Third Amended Consolidated Complaint, which will include all claims being released as part of this Settlement by Plaintiffs, the Gardner-Dedicated West Settlement Class, the Expedited Settlement Class, and the PAGA Aggrieved Employees.

76.    On the same date or prior to the date that Counsel for the Settlement Classes files the Motion for Preliminary Approval of this settlement, Counsel for the Settlement Classes shall additionally file a notice with the LWDA providing the LWDA with notice of the Settlement as required by Cal. Labor Code § 2699(l)(2). The hearing on the motion for preliminary approval shall be set for no earlier than 70 days after the motion is filed.

77.    Within 10 days of the date Plaintiffs file a Motion for Preliminary Approval of this Settlement, CRST shall serve the Notice of this Stipulation on the appropriate federal and state officials, as required by the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715(b).

78.    **Dismissal with Prejudice of the Action.** The Action shall be dismissed with prejudice within ten days after CRST deposits the Gross Settlement Amount into the QSF account as described in Paragraph 59 of this Agreement, as part of the consideration for the Settlement. On the same date, Plaintiff Matney-Tate shall additionally move to dismiss his separately pending PAGA action entitled Matney-Tate v. Gardner Trucking, Inc., pending in California Superior Court for San Joaquin County under Case No. STK-CV-UOE-2021-11019.

79.    **Duties of the Parties Following Final Court Approval.** Following final approval of the Settlement, Counsel for the Settlement Classes will submit a mutually agreeable Final Approval Order: approving the Agreement, adjudicating the terms thereof to be fair, reasonable, and adequate;

directing consummation of all terms and provisions; dismissing the Action with prejudice; and, without affecting the finality of the Final Approval Order, allowing the Court to retain jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Final Approval Order and the Agreement. The executed Final Approval Order shall be posted on the Settlement Administrator's website.

**K.    MISCELLANEOUS PROVISIONS**

80.    **Mutual Full Cooperation.** The Class Representatives, CRST, Counsel for the Settlement Classes, and Defense Counsel agree to cooperate fully with each other to accomplish the terms of this Agreement, including execution of necessary documents and other such other action as may reasonably be necessary to implement the terms herein.

81.    **Parties' Authority.** The signatories to this Agreement represent that they are fully authorized to enter into this Agreement and bind Plaintiffs, the Gardner-Dedicated West Settlement Class, the Expedited Settlement Class, and CRST to all terms stated herein.

82.    **Binding Nature of the Agreement.** This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Released Parties. Plaintiffs represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, or encumbered any of the Released Claims.

83.    This Agreement may not be admitted into evidence or used in any proceeding except an action, motion or proceeding to approve, interpret, or enforce the terms of this Agreement.

84.    **Amendments.** Material amendments to this Agreement may be made only by a written instrument signed by Counsel for the Settlement Classes, Plaintiffs, Defense Counsel, and CRST. Plaintiffs and CRST authorize their respective counsel to make any ministerial amendments or modifications to this Agreement, including formatting changes, typographic corrections, and any necessary revisions to the draft Class Notice documents attached hereto, by way of written instrument signed by Counsel for the Settlement Classes and Defense Counsel on their respective clients' behalf. No rights under this Agreement may be waived except in writing.

85.    Joint Drafting of Settlement Documents. Counsel for the Settlement Classes and Defense Counsel have arrived at this Agreement through a series of informed and arm's-length

negotiations, including two private, full-day mediations, and taking into account all relevant factors, present and potential. This Agreement has been drafted jointly by Counsel for the Settlement Classes and Defense Counsel and, therefore, in any construction or interpretation of this Agreement, the same shall not be construed against any of the Parties.

86.    **Public Comments Regarding the Action or the Agreement.** Neither Plaintiffs nor Counsel for the Settlement Classes shall issue any press release related to the Settlement. Plaintiffs and Counsel for the Settlement Classes agree that, prior to preliminary approval of the Settlement, they will keep the terms of the Settlement confidential except for purposes of communicating with Plaintiffs. Plaintiffs have been informed that the Settlement is confidential and shall be advised to keep the Settlement confidential.

87.    From and after preliminary approval of the Settlement, Plaintiffs and Counsel for the Settlement Classes may: (a) as required by law; (b) as required under the terms of the Settlement; or (c) as required under Settlement Classes Counsel's duties and responsibilities as Settlement Classes Counsel, comment regarding the specific terms of the Settlement. In all other cases, Plaintiffs and Counsel for the Settlement Classes agree to limit their statements regarding the terms of the Settlement, whether oral, written or electronic (including the world wide web), to say the Action has been resolved. Nothing in this Paragraph is intended to interfere with Settlement Classes Counsel's duties and obligations to faithfully discharge their duties as Counsel for the Settlement Classes, including but not limited to, communicating with members of the Settlement Classes regarding the Settlement.

88.    Following entry of the order granting final approval of the Settlement, Counsel for the Settlement Classes shall be prohibited from including information regarding the Settlement on its firm's website.

89.    All necessary disclosures may be made on the Parties' financial statements; to the Parties' accountants and auditors; in public filings; to government regulatory agencies; and to any local, state, or federal taxing authority: or as otherwise required by law.

90.    **Confidentiality of Documents.** After the expiration of any appeals period, the Settlement Administrator, shall return to CRST all documents, deposition transcripts, declarations and other information designated confidential by CRST and obtained in the Action or shall certify to

Defense Counsel that all such documents, transcripts, declarations, and other information, whether in paper or electronic form, including copies, have been destroyed. Plaintiffs' Counsel shall retain those documents confidential pursuant to any protective order and pursuant to its obligations and duties. Plaintiffs' Counsel may not use the documents for any other cases or for any other purposes.

91.    **Execution of the Agreement.** This Agreement may be executed in one or more counterparts and by facsimile. All executed copies of this Agreement, and photocopies thereof, shall have the same force and effect and shall be as legally binding and enforceable as the originals.

92.    No Third-Party Beneficiaries. Plaintiffs, members of the Settlement Classes, CRST, and the Released Parties are direct beneficiaries of this Agreement. There are no third-party beneficiaries of this Agreement.

93.    **Continuing Jurisdiction.** The Court shall retain jurisdiction over the implementation of this Agreement and all matters arising out of, or related to, its implementation. The Court shall not have jurisdiction to modify the terms of the Agreement without the consent of all Parties in writing.

94.    **Severability.** In the event that any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall in no way effect any other provision if Defense Counsel and Counsel for the Settlement Classes, on behalf of the Parties and the Settlement Classes, mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.

95.    **Governing Law.** This Settlement is intended to and shall be governed by the laws of the State of California, without regard to conflict of law principles, in all respects, including execution, interpretation, performance, and enforcement.

96.    **Disputes.** Any dispute arising out of or relating to this Agreement that cannot be resolved by the Parties, other than a dispute by a member of the Settlement Classes, will be submitted to the Mediator, Hon. Amy D. Hogue (Ret.), for further mediation. The Parties will split the Mediator's costs, and all Parties will bear their own attorneys' fees and other costs incurred resolving any dispute arising out of this Agreement. Nothing in this provision shall limit Counsel for the Settlement Classes ability to seek any such attorneys' fees and other costs incurred as part of the Gross Settlement Amount.

97.    **Stay Upon Appeal.** In the event of a timely appeal from judgment and dismissal, the judgment shall be stayed, CRST shall have no obligation to fund the Gross Settlement Amount, and none of the Gross Settlement Amount shall be distributed. The actions required by this Settlement shall not take place until all appeal rights have been exhausted by operation of law.

PLAINTIFF KASPER LEUZINGER

Dated: _____    By:    _____

Kasper Leuzinger

PLAINTIFF WILLIAM MATNEY-TATE

Dated: _____    By:    _____

William Matney-Tate

PLAINTIFF MICHAEL ALLEN JENSEN

Dated: _____    By:    _____

Michael Allen Jensen

PLAINTIFF RICARDO AMEZCUA

Dated: _____    By:    _____

Ricardo Amezcua

CRST EXPEDITED, INC. d/b/a CRST The Transportation Solution, Inc.

Dated: _____    By:    _____

Lisa A. Stephenson, its General Counsel

SETAREH LAW GROUP

Dated: _____        By: _____

Shaun Setareh
Attorney for Plaintiffs

JAMES HAWKINS APLC

Dated: _____        By: _____

James Hawkins
Gregory Mauro
Attorneys for Plaintiffs

SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.

Dated: _____        By: _____

James H. Hanson
Attorney for CRST Expedited, Inc.

4884-2349-0517, v. 2

26